THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER CAMPBELL, Defendant-Appellant.

Fifth District    No. 5—93—0304

Opinion filed October 27, 1995.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Stephen E. Norris, of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Christopher Campbell, was charged with burglary and criminal damage to property (over $300) stemming from a January 9, 1992, incident in which a rural church was broken into and vandalized, causing over $1,400 in damage to the building. He was convicted and sentenced to concurrent terms of seven years' imprisonment on the burglary charge and three years' imprisonment on the criminal damage to property charge and ordered to make restitution in the amount of $1,491.55 to the church. Defendant asserts that (1) the testimony of his accomplices was insufficiently reliable to prove him guilty beyond a reasonable doubt, and (2) he was denied adequate assistance of counsel because counsel failed to tender a jury instruction on accomplice testimony, denying him a fair trial.

The testimony adduced at the July 23, 1992, trial was as follows. Ronald Ewald, a trustee of the Richardson Hill Church in Dahlgren, checked the church at about 1:50 on the afternoon of January 9, 1992. After making sure the roof was not leaking and that two fresh graves were not jeopardized by recent rainfall, he locked the inner and outer doors and went to his farm, just down the road from the church. At about 2:30 that afternoon, he saw a grey, late-model car drive toward the church, prompting him to return to check on the building. As Ewald drove back to the church, he saw a man running across the fields, away from the building. The grey car was being driven down the road, away from the church. He spoke with the driver of the grey car, Billy Morphis, whom he knew, when their cars met on the road. He recognized Morphis' companion, Cheryl Nordhouse, but was not acquainted with the other woman in the car, Dixie Gumm. Morphis told Ewald: "You never seen me or these girls here at all. You didn't even see us here." When Ewald arrived at the church, the doors were wide open, although they had been securely locked when he left at 1:50 p.m.

Ewald returned home, asked his mother to call the sheriff, and drove back up the road to intercept defendant, who emerged from the field with his shoes and clothing covered with mud. Defendant volunteered that he had fought with Morphis, who had attempted to run him down with the car, prompting him to flee over the fields, he did not know what was going on, he had no part of whatever the others did, and he stated, "I didn't do nothing. They did it all." Ewald waited for the sheriff at the church with defendant. When the sheriff arrived, an investigation of the church revealed that the outer and inner doors had been forced open, the church was "a shambles," and every surface was coated with fine powder from a dry-compound fire extinguisher.

Morphis testified on behalf of the prosecution. He admitted that he was an inmate at Vienna Correctional Center as a result of his plea of guilty to burglary and criminal damage to property stemming from the incident at the Richardson Hill Church; he pleaded guilty in exchange for a lesser sentence; he had previously served time in prison on a conviction for unlawful restraint; and his shoe print was found in the powder on the church floor. He also admitted that he had lied to Ewald when he told him he had not been in the church and lied to the sheriff when he told him that the church doors were open when he arrived at the building. Morphis asserted that he and defendant had been at the church earlier in the week of the burglary, but he did not enter the church with defendant until the day of the incident. He testified that defendant was the person who sprayed the fire extinguisher, and a quarrel between Gumm and defendant prompted defendant to run off across the field. He maintained that his plea of guilty was prompted by a rumor that defendant was going to assert that Morphis was the sole cause of the damage to the church and his fear that he could not avoid conviction.

Cheryl Nordhouse testified that she did not go into the church until she saw what looked like smoke coming out of the windows. When she entered, she saw defendant spraying a fire extinguisher around the interior, and she left because she was asthmatic and the powder irritated her lungs. She admitted that her testimony was given in exchange for the dismissal of the charges against her stemming from the incident at the church and that she had dated Morphis in the past.

Defendant testified that he was never in the church and that he walked away from the church over the fields because he had quarreled with Gumm, his girl friend, and broken her windshield. He stated that the first time he was at the church was the day of the break-in. He saw the church doors standing open and heard Morphis and Nordhouse in the church, but he did not go into the building. He admitted he was on probation for burglary and criminal damage to property at the time of the instant crime and had prior convictions for felony theft and several traffic violations.

Defendant was found guilty of both charges and sentenced. His motion for new trial was denied, and an untimely motion to reduce sentence was dismissed.

Defendant asserts that his counsel provided inadequate assistance through his failure to tender a jury instruction on accomplice testimony. He maintains that both Morphis and Nordhouse were accomplices, in that both were initially charged with the crimes for which defendant was convicted, Morphis pleaded guilty and testified

against defendant in a successful attempt to obtain a lesser sentence than he might otherwise have received, and Nordhouse testified in exchange for the dismissal of the charges against her. (See *People v. Franklin* (1990), 135 Ill. 2d 78, 104, 552 N.E.2d 743, 755.) He recognizes that the courts of this State have long held that the uncorroborated testimony of accomplices, if found believable by the trier of fact, is sufficient to sustain a criminal conviction. (*People v. Steidl* (1991), 142 Ill. 2d 204, 226-27, 568 N.E.2d 837, 845, *cert. denied* (1991), 502 U.S. 853, 116 L. Ed. 2d 125, 112 S. Ct. 161.) Defendant argues that our decision in *In re D.R.S.* (1994), 267 Ill. App. 3d 621, 626, 643 N.E.2d 839, 843, supports his contention that where there is no corroborating evidence to support a conviction, "[a] judge and a jury are instructed that an accomplice's testimony is to be viewed with the utmost caution and suspicion." The accomplices' testimony here was not uncorroborated, because it was supported by that of Mr. Ewald, who testified that defendant was present at the church when it was vandalized and made spontaneous exculpatory statements which revealed knowledge of wrong-doing in the church.

Illinois Pattern Jury Instructions, Criminal, No. 3.17 (3d ed. 1992) (IPI Criminal 3d No. 3.17) provides the standard instruction on the testimony of an accomplice:

> "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." (IPI Criminal 3d No. 3.17.)

The State argues that this instruction was unnecessary, given that their testimony was not uncorroborated and the jury was aware that the accomplices had made deals with the State in exchange for their testimony against defendant, had criminal records, and related versions of the occurrence which were inconsistent in some ways. Furthermore, it notes, both the State and defense counsel focused on the credibility of the accomplice witnesses in closing argument and discussed the deals entered into by the witnesses who testified against defendant. The State contends that coupled with these facts, the submission to the jury of Illinois Pattern Jury Instructions, Criminal, No. 1.02 (2d ed. 1981) (IPI Criminal 2d No. 1.02) on witness credibility was sufficient to apprise the jury that it was necessary to consider any interests of the accomplice witnesses which might be fostered through their testimony for the State.

██ █ Where the evidence against a defendant is overwhelming, the lack of a particular instruction is rendered harmless in light of the other instructions, arguments of counsel, and a generally fair

trial. (See *People v. Layhew* (1990), 139 Ill. 2d 476, 490-92, 564 N.E.2d 1232, 1237.) Our supreme court has stated that the pattern accomplice-witness jury instruction should be given if the totality of the evidence and the reasonable inferences that can be drawn from the evidence establish probable cause to believe that a witness participated in the commission of a crime. (*People v. Henderson* (1990), 142 Ill. 2d 258, 314-15, 568 N.E.2d 1234, 1261, *cert. denied* (1991), 502 U.S. 882, 116 L. Ed. 2d 189, 112 S. Ct. 233.) Where the witness, rather than the defendant, could have been the person responsible for the crime, the defendant is entitled to have the accomplice-witness instruction given to the jury. (*People v. Montgomery* (1993), 254 Ill. App. 3d 782, 790, 626 N.E.2d 1254, 1260, *appeal denied* (1994), 154 Ill. 2d 566, 631 N.E.2d 714.) If a witness admits presence at the scene of the crime, could have been indicted either as a principal or under a theory of accountability, but denies involvement, a defendant is entitled to an accomplice-witness instruction. *People v. Lewis* (1992), 240 Ill. App. 3d 463, 467, 609 N.E.2d 673, 676.

The State cites *People v. West* (1987), 156 Ill. App. 3d 608, 612, 509 N.E.2d 153, 155, for the proposition that the trend is away from instructions that comment on particular types of evidence or give undue emphasis to particular evidence in a case. The *West* case dealt with the submission by defense counsel of a non-IPI instruction on the credibility of a drug addict, where the complainant testified against the defendant, who allegedly stabbed him. The reviewing court found that it was proper to refuse the instruction because evidence was lacking that the complainant was addicted at either the time of the stabbing or the time of his testimony. The court noted that the trend was away from giving instructions that commented on particular types of evidence or gave undue emphasis to parts of the evidence in a case, citing IPI Criminal 2d, Introduction to 3.00 Series. We observe that that introduction also states: "[C]ertain exceptions to the general disapproval [exist]. This Chapter contains those exceptions." (IPI Criminal 2d, Introduction to 3.00 Series, at 17.) We also observe that the accomplice-testimony instruction is contained in that chapter.

■ Some of the cases cited by the State in support of its position are ones in which non-IPI instructions were found to be inappropriate or unnecessary. Other cases cited do not deal specifically with the lack of necessity for an accomplice-witness-testimony instruction. This is not a case where the evidence against defendant was genuinely overwhelming and the lack of a particular instruction was rendered harmless in light of the other instructions, arguments of counsel, and a generally fair trial. See *Layhew*, 139 Ill. 2d at 490-92, 564 N.E.2d at 1237.

Morphis was in the church, a fact known through his admission in open court, Nordhouse's testimony, and the presence of his footprint in the powder on the floor. Morphis admitted on the stand that he had lied to Ewald, when he met him on the road, and to the sheriff. Nordhouse, by her own admission, was in the church, albeit briefly, contrary to Morphis' testimony. Although her boots were taken for examination, apparently no footprints in the compound were found to be attributable to Nordhouse. Defendant's footwear was covered with mud from his crossing the muddy fields, a trip which would have obliterated any residue on their soles. He showed the sheriff the bottom of his shoes when asked to do so, but they were not taken from him because he "had so much mud on the bottom of [the] shoe that you couldn't even tell any identity on them."

Ewald's testimony irrefutably placed defendant at the scene of the crime, as did that of defendant himself. The testimony of Morphis and Nordhouse placed them with defendant in the church but identified defendant as the perpetrator of the damage to the structure. Both of the accomplice witnesses admitted that they had benefited from their agreements to testify for the State and had maintained a dating relationship. Although the deals made by the witnesses in exchange for their testimony did not necessarily render their testimony unworthy of belief (*People v. Lopez* (1993), 242 Ill. App. 3d 160, 165, 610 N.E.2d 189, 192), we believe that the totality of the circumstances warranted the submission of an accomplice instruction to the jury.

■ Failure of defense counsel to tender an accomplice-witness instruction does not necessarily constitute ineffective assistance of counsel. (*People v. Franklin* (1990), 135 Ill. 2d 78, 104, 552 N.E.2d 743, 754-55.) Counsel is ineffective if (1) counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness under prevailing professional norms; and (2) that deficient performance so prejudiced the defense as to deny the defendant a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; *People v. Wright* (1986), 111 Ill. 2d 18, 30, 488 N.E.2d 973, 979.) The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255.) The court will look at the totality of the circumstances in determining whether defense counsel's performance was deficient for failing to tender the accomplice-witness instruction. *Franklin*, 135 Ill. 2d at 103, 552 N.E.2d at 755.

Had the accomplice-witness instruction been given, the jury would have been compelled to examine the testimony of Morphis and Nordhouse in that light, which would have militated in favor of giving serious consideration to defendant's explanation of the event. The court in *People v. Glasco* (1993), 256 Ill. App. 3d 714, 717, 628 N.E.2d 781, 785, found that despite the fact that the evidence linking the defendant to the offenses charged was sufficient for the jury to find him guilty beyond a reasonable doubt, and the accomplice-witness instruction was given, reversible error occurred when the court limited defense counsel's closing-argument discussion of the instruction. We believe that a similar result is dictated by the facts of the case at bar.

The evidence and the reasonable inferences to be drawn from it dictate that an accomplice-witness instruction should have been tendered to the court by trial counsel and that trial counsel rendered ineffective assistance through his failure to tender the instruction on accomplice witnesses. Defendant's conviction is reversed, and this cause is remanded for retrial.

For the foregoing reasons, the judgment of the circuit court of Hamilton County is reversed, and the cause is remanded.

Reversed and remanded.

MAAG, P.J., and RARICK, J., concur.