No. 2--03--0467

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE

OF ILLINOIS,

Plaintiff-Appellee,

v.

DEMETRIUS D. DAVIS, a/k/a Debetrius Davis,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of Lake County.

No. 02--CF--2791

Honorable

John T. Phillips,

Judge, Presiding.

______________________________________________________________________________

JUSTICE CALLUM delivered the opinion of the court:

On January 24, 2003, a jury convicted defendant Demetrius D. Davis of financial identity theft (720 ILCS 5/16G--15(a) (West 2002)), computer fraud (720 ILCS 5/16D--5 (West 2002)), and theft (720 ILCS 5/16--1(a)(2)(A) (West 2002)).  On March 28, 2003, defendant was sentenced to concurrent terms of 6½ and 2½ years in prison.  On appeal, defendant raises two issues: (1) whether his trial counsel was ineffective because she failed to request a jury instruction on accomplice witness testimony; and (2) whether the computer fraud conviction must be vacated under the one-act, one-crime rule.  For the following reasons, we find that trial counsel was effective and that the computer fraud conviction should not be vacated.  Accordingly, we affirm.

In the summer of 2002, Paul Keller and Carrie Marusich realized that they had become victims of identity theft when banks contacted them to inquire into recent credit card applications.  Knowing that they had not applied for credit cards from those banks, they immediately reported the crime to the authorities, who began investigating.  The investigation revealed that credit card applications had been filed in the victims' names and that the authorized user had been listed as "D. Davis," a person neither victim knew.  Additionally, although the victims were listed on the credit card applications, neither victim had lived at 1520 Ridgeland, Waukegan, Illinois, the address listed as the mailing address on the applications.  The applications were made via the Internet, and in at least one instance the authorities identified the specific Internet Protocol (IP) address from which the application had been made.  One bank had issued two credit cards, one in Paul Keller's name and one in the name of D. Davis.  The cards had been used to obtain $1,659 in car tires and rims, $499.16 in audio equipment, a $2,000 cash advance, and other miscellaneous items, totaling $12,497.04 in purchases.  Every time the bank put a fraud alert hold on the cards, "D. Davis" had the hold lifted.

Upon further investigation, the authorities discovered that, before they became victims of identity theft, both Keller and Marusich had completed credit applications at their local Radio Shack.  Although Keller could not identify the salesperson who had helped him, Marusich had retained her sales receipt and the business card of the salesperson who had helped her.  The business card was that of Demetrius Davis, a Radio Shack employee whom Marusich identified as defendant at trial.  The sales receipt, however, had "JRL" written on it, and "Jason" was written on the business card.

Investigators found defendant at a house with his fiancée, Jonyell Daniels.  A search of the home revealed the "D. Davis" credit card and defendant's identification card next to a computer, letters from various banks addressed to Paul Keller, the "Paul Keller" credit card in a leather wallet, individuals' personal information on a list that was in a purse, and a car registered to Daniels.  The car had new tires and new audio equipment.  Nothing in the house listed the house as defendant's residence.  Investigators arrested defendant and Daniels.

After the arrest, Detective Thomas Luka interviewed both defendant and Daniels.  According to Detective Luka, defendant stated that he lived with Daniels, that he placed the computer in the house, and that he used the computer to access online credit card applications.  Defendant admitted using the "D. Davis" credit card to make most of the purchases charged to the card, but he did not recognize all of the charges.

During the interview, defendant signed both a handwritten statement and a typewritten statement.  In the handwritten statement, defendant admitted to obtaining a list of individuals' personal information from a friend named Jason and using that list to obtain a credit card in Paul Keller's name.  He wrote that his intent was to make a better life for himself and for his family.  However, he also wrote, "These are the facts that were brought to me by Det. Luka."  In the more detailed typewritten statement, defendant admitted to obtaining a list of Radio Shack customers' names, addresses, social security numbers, dates of birth, and phone numbers.  Via his computer, he used this information to complete online applications for credit cards from various banks.  Through this method, he obtained one credit card in the name of Paul Keller and an authorized user card in the name of D. Davis, which he had mailed to his grandmother's address at 1520 Ridgeland.  He kept the "D. Davis" card for himself and gave the "Paul Keller" card to Daniels.  While he was with Daniels, he purchased tires, rims, and audio equipment for her car.  He also used the card to obtain a $2,000 cash advance, some of which he gave to Daniels.

Daniels also prepared a handwritten statement, which she admitted was "pretty much true" despite alleging Detective Luka's influence.  At trial, Daniels testified consistently with her statement that she was dating defendant and was with him when he purchased a computer, which he placed in her bedroom.  She knew defendant's computer passwords and that defendant's IP address was the same as the one from which the investigators found a credit card application had been made.  Defendant eventually showed Daniels a list of individuals' personal information and told her that they could be better off by using the information to obtain credit cards.  Later, while at defendant's grandmother's house, defendant gave Daniels the "Paul Keller" card, which she placed in her wallet, but defendant kept the "D. Davis" card.  Daniels claims that she never used the "Paul Keller" card, but witnessed defendant using the "D. Davis" card to make purchases at various locations.

Consequently, defendant and Daniels were charged with a variety of crimes.  Daniels testified that she pleaded guilty to theft and was sentenced to 30 months of probation, 12 months of work release, and $12,000 in restitution.  Defendant chose to go to trial.

At trial, defendant, who was impeached by his prior felony conviction of aggravated robbery, testified on his own behalf.  He recanted his written statements, claiming that Detective Luka had coerced them from him by pushing him and beating him while he was in handcuffs.  Defendant claimed that his request for counsel had been ignored, that Detective Luka had produced the typewritten statement before speaking to him and had dictated the first page of the written statement, that he had written the rest of the statement based on what he thought he was expected to say, and that he had signed the statements because he feared for his safety.  He claimed that he had indicated this coercion by writing, "These are the facts that were brought to me by Det. Luka."  On rebuttal, Detective Luka denied all of these allegations, and the parties stipulated that defendant's booking sheet, prepared after the interview, noted that defendant described his physical condition as "Good." 

While testifying, defendant changed his version of events, claiming that he had been trying to protect Daniels.  He said that Daniels approached him to tell him that she had found her biological father, who wanted to give her a debit card linked to his bank account.  Daniels feared, however, that her mother would be mad that she had found her father, and she did not want her mother to find the debit card in the mail.  Defendant agreed to have the card sent to his grandmother's house, where he lived.  He was not at his grandmother's house when the card arrived, so Daniels picked it up without him.  Not aware of the father's name, of the existence of a card in Paul Keller's name, or of whose name would be on the account, defendant accepted from Daniels the "D. Davis" card, which Daniels told him was in his name in order to hide from her mother the fact of her father's financial support.  Daniels told him that the bills went to her father, so at her request defendant bought her things with the card.

Defendant claimed that he never got a chance prior to trial to tell police that Daniels told him that she was looking for her father.  He denied using the computer to get a credit card in Paul Keller's name, denied signing or ever seeing the "Paul Keller" card, and denied making some of the purchases charged to the account.  He did, however, admit to making the list of customers' personal information, but claimed to have done so at the request of the Radio Shack district manager.  He claimed never to have shown Daniels the list or to have taken it from the store.  Additionally, he claimed not to have been working the day Marusich completed her credit application at Radio Shack, and, as evidence that someone else helped her that day, he pointed to the facts that "JRL" was written on the sales receipt and that "Jason" was written on his business card.  Finally, he did admit to calling the bank to insist that the fraud alerts be removed.

Despite his version of events, the jury found defendant guilty on all counts.  The court denied defendant's motion for a new trial and sentenced him.  Defendant now appeals, claiming ineffective assistance of counsel and a violation of the one-act, one-crime rule.

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant requests that his convictions be vacated and his cause be remanded for a new trial because his trial counsel failed to submit the accomplice witness jury instruction, thus rendering counsel's assistance ineffective.  Whether counsel provided ineffective assistance is a mixed question of fact and law.  
Strickland v. Washington
, 466 U.S. 668, 698, 80 L. Ed. 2d 674, 700, 104 S. Ct. 2052, 2070 (1984).  Therefore, we defer to the trial court's findings of fact, but we make an independent judgment about the ultimate legal issue.  
People v. Crane
, 195 Ill. 2d 42, 51 (2001).  We review 
de novo
 whether counsel's omission supports an ineffective assistance claim.  
People v. Daniels
, 187 Ill. 2d 301, 307 (1999).

The purpose of the effective assistance guarantee of the sixth amendment is to ensure that a criminal defendant receives a fair trial.  
Strickland
, 466 U.S. at 684-85, 80 L. Ed. 2d at 691-92, 104 S. Ct. at 2063.  The ultimate focus of the inquiry is on the fundamental fairness of the challenged proceedings.  
Strickland
, 466 U.S. at 696, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.  However, there is a strong presumption of outcome reliability, so a defendant must show that counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  
Strickland
, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.  To do so, the defendant must establish both (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense.  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; see also 
People v. Chandler
, 129 Ill. 2d 233, 242 (1989).

Defendant argues that counsel's performance in this case was deficient because she failed to submit Illinois Pattern Jury Instructions, Criminal, No. 3.17 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 3.17), which provides the standard instruction on the testimony of an accomplice:

"When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution.  It should be carefully examined in light of the other evidence in the case."

Because Daniels was an accomplice, and because defendant's guilt rested largely on her testimony, defendant contends that the failure to include this instruction was unreasonable.  To succeed, defendant must show that counsel's representation fell below an objective standard of reasonableness, measured by the prevailing professional norms.  
Strickland
, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65.  The question is whether counsel's assistance was reasonable considering all the circumstances.  
Strickland
, 466 U.S. at 688, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.  Judicial scrutiny of counsel's performance is highly deferential, and there is a presumption that, under the circumstances, the challenged omission was sound trial strategy.  
Strickland
, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

Generally, the accomplice witness instruction should be given if the totality of the evidence and the reasonable inferences therefrom establish probable cause to believe that the witness participated in the crime, either as a principal or under a theory of accountability.  
People v. Henderson
, 142 Ill. 2d 258, 314-15 (1990).  Where, as here, an accomplice testifies, strategic reasons for not requesting IPI Criminal 4th No. 3.17 typically have eluded the courts.  See, 
e.g.
, 
People v. Love
, 285 Ill. App. 3d 784, 792 (1996).  However, because our objective is not to grade counsel's performance, we "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; see also 
People v. Harris
, 182 Ill. 2d 114, 137 (1998).  Even if counsel unreasonably erred, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance.  
Strickland
, 466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067.

The burden is on the defendant to affirmatively prove prejudice.  
Strickland
, 466 U.S. at 693, 80 L. Ed. 2d at 697, 104 S. Ct. at 2067.  To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; see also 
People v. Albanese
, 104 Ill. 2d 504, 525 (1984).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  The question, therefore, is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting the defendant's guilt.  
Strickland
, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.  To determine whether the defendant has met the burden of showing that the decision reasonably likely would have been different absent the error, we must consider the totality of the evidence before the jury, taking the unaffected findings as a given and taking due account of the effect of the error on the remaining findings.  
Strickland
, 466 U.S. at 695-96, 80 L. Ed. 2d at 698-99, 104 S. Ct. at 2069.  Prejudice is lacking where the court can be confident in the reliability of the outcome of the challenged proceeding.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 697-98, 104 S. Ct. at 2068.

Generally, confidence in the reliability of an outcome is less where the verdict is weakly supported by the record than where there is overwhelming record support, because a weak record is more likely to have been affected by errors.  
Strickland
, 466 U.S. at 696, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.  For example, in 
People v. Campbell
, 275 Ill. App. 3d 993, 995 (1995), the defendant was convicted of burglary and criminal property damage for breaking into a church and spraying the interior with a fire extinguisher.  In exchange for lesser sentences or for the dismissal of charges in the same case, two State witnesses testified at trial that the defendant had entered the church and had sprayed the fire extinguisher, but that they did not do any damage to the church themselves.  
Campbell
, 275 Ill. App. 3d at 995.  In his own defense, the defendant testified that he did not enter the church and that the two State witnesses had sprayed the fire extinguisher.  
Campbell
, 275 Ill. App. 3d at 995.  None of the testimony at the trial was at odds with the physical evidence or was impeached with prior inconsistent statements.  
Campbell
, 275 Ill. App. 3d at 995.  The appellate court found that defense counsel's failure to tender the accomplice witness instruction with respect to the two State witnesses was prejudicial because the evidence was closely balanced.  
Campbell
, 275 Ill. App. 3d at 999.

On the other hand, the court in 
People v. McCallister
, 193 Ill. 2d 63, 98 (2000), found 
Campbell
 to be "readily distinguishable" where the facts are not closely balanced.  In 
McCallister
, the defendant was convicted of three counts of first degree murder.  
McCallister
, 193 Ill. 2d at 67.  An eyewitness testified in great detail about the events leading up to and following the murders, as well as the murders themselves, stating that the defendant had murdered in cold blood and had shot each victim more than once.  
McCallister
, 193 Ill. 2d at 68-73.  The physical evidence and several other witnesses corroborated his testimony.  
McCallister
, 193 Ill. 2d at 67-68, 73-78.  In his own defense, the defendant, who had prior convictions, testified that he had shot the first two victims in self-defense, partially because of a prior threat, and that the eyewitness had shot the third victim before shooting each of the first two victims once more.  
McCallister
, 193 Ill. 2d at 78-83.  The defendant's testimony was called into question by the testimony of several witnesses, was inconsistent with the physical evidence, and was impeached by his statement to the police and by one witness who testified that the defendant had confessed to her that he had murdered all three victims.  
McCallister
, 193 Ill. 2d at 68-84.  The defendant tried to attack the credibility of his statement to the police by stating that he did not read it before he signed it, but on rebuttal a police officer testified that the defendant had read the statement before signing it.  
McCallister
, 193 Ill. 2d at 84.  Based on the evidence presented to the jury, the Illinois Supreme Court found that the defendant failed to prove that his counsel's failure to tender IPI Criminal 4th No. 3.17 against the eyewitness's testimony caused prejudice.  
McCallister
, 193 Ill. 2d at 90-91.  The court reasoned that the defendant was unable to offer any evidence to corroborate his self-serving testimony about the existence of a prior threat, even though he had the opportunity to report it in the statement he gave to the police, and that the rest of his testimony, though not unbelievable, was inherently weak, impeached, and inconsistent with the physical evidence.  
McCallister
, 193 Ill. 2d at 91-94.  The court concluded that even if the accomplice witness instruction had been given to the jury, it would neither cure the inherent weaknesses of the defendant's testimony nor increase the likelihood of its acceptance by the jury, because the case was not close.  
McCallister
, 193 Ill. 2d at 95-98.

We find that the case at bar falls closer to 
McCallister
 than it does to 
Campbell
.  In 
Campbell
, there was nothing but the testimony of the two State witnesses to inculpate the defendant and, in turn, exonerate the witnesses, who participated in the same crime and who testified in exchange for leniency.  Therefore, highlighting their biases and self-interests through the accomplice witness instruction was essential to a fair trial.  On the other hand, in 
McCallister
, the defendant more likely than not would have lost the battle for credibility against the eyewitness, even if the accomplice witness instruction had been presented to the jury, because the defendant's testimony was "replete with objectively discernable weaknesses, including prior inconsistent statements, critical facts that were uncorroborated, and assertions that were at odds with the physical evidence."  
McCallister
, 193 Ill. 2d at 98.  The same is true in this case.  As between defendant and Daniels, defendant more likely than not would have lost the battle for credibility, even if the accomplice witness instruction had been presented to the jury.  Defendant's testimony at trial was uncorroborated, contrary to other unbiased testimony, and impeached by his prior inconsistent statements and by his prior conviction.  Daniels' testimony, however, was consistent with the evidence, including defendant's prior statements to the police.

At best, defendant could have convinced the jury to question Daniels' motives for testifying against him, the most potent of which was to avoid being found culpable of the crimes herself.  After all, the purpose of the accomplice witness instruction is to warn the jury that there may be a strong motivation for a witness to provide false testimony for the State in return for immunity or some other form of lenient treatment.  
People v. Carreon
, 162 Ill. App. 3d 990, 993 (1987).  By the time of trial, however, Daniels already had pleaded guilty to and had been sentenced for theft directly related to this case.  Therefore, her expectation of leniency or favoritism on the State's behalf was virtually nonexistent.  
People v. Pierce
, 223 Ill. App. 3d 423, 435 (1991).  As a result, the rationale underlying the application of the instruction is not present.  
Pierce
, 223 Ill. App. 3d at 435.

Furthermore, the jury was presented with the general credibility instruction, telling the jury to consider any interest, bias, or prejudice the witnesses might have.  Under circumstances such as the ones in this case, the inclusion of the general credibility instruction factors in favor of finding the lack of prejudice caused by the exclusion of the accomplice witness instruction.  See 
McCallister
, 193 Ill. 2d at 96-97; see also 
People v. Lewis
, 240 Ill. App. 3d 463, 467 (1992).  Consequently, we are confident in the reliability of the outcome of the trial in this case, as defense counsel's failure to tender the accomplice witness instruction caused no prejudice to defendant.  We therefore reject defendant's claim of ineffective assistance of counsel.

II. ONE-ACT, ONE-CRIME RULE

Next, defendant argues that his conviction of computer fraud must be vacated because it is based on the same act as his conviction of theft, thereby violating the one-act, one-crime rule established in 
People v. King
, 66 Ill. 2d 551, 566 (1977).  Although defendant waived this issue by failing to object at the sentencing hearing and in a postsentencing motion, the issue should be reviewed under the plain-error doctrine because it affects substantial rights.  
People v. Pearson
, 331 Ill. App. 3d 312, 321 (2002); see also 
People v. Moshier
, 312 Ill. App. 3d 879, 881 (2000).  Allegations that a defendant was subject to multiple convictions based on the same physical act are reviewed 
de novo
.  
People v. Boyd
, 307 Ill. App. 3d 991, 998 (1999).

In 
People v. Rodriguez
, 169 Ill. 2d 183, 186 (1996), the Illinois Supreme Court explained the one-act, one-crime rule set forth in 
King
 as follows:

"Under 
King
, a court first determines whether a defendant's conduct consisted of separate acts or a single physical act.  Multiple convictions are improper if they are based on precisely the same physical act.  [Citations.]  If the court determines that the defendant committed multiple acts, the court then goes on to determine whether any of the offenses are lesser included offenses.  [Citations.]  If so, then, under 
King
, multiple convictions are improper; if not, then multiple convictions may be entered."

The 
King
 court defined the term "act" to mean "any overt or outward manifestation which will support a different offense."  
King
, 66 Ill. 2d at 566.

Here, defendant was charged with computer fraud (720 ILCS 5/16D--5 (West 2002)) and theft (720 ILCS 5/16--1(a)(2)(A) (West 2002)).  According to defendant, his two convictions were improper because "[b]oth charges allege that the defendant used a credit card fraudulently obtained in the name of Paul Keller to buy things."

We conclude that defendant's convictions of both computer fraud and theft do not violate the one-act, one-crime rule.  Applying the rule espoused in 
King
, we find that the computer fraud offense and the theft offense were based on separate acts.  Defendant committed computer fraud by representing himself as Paul Keller while using a computer to complete online application forms in order to obtain a credit card.  Defendant committed theft by accepting the credit card and then using it to obtain over $12,000 worth of merchandise and financing.  Each of these separate acts constituted an overt or outward manifestation that supported a different offense.  See 
Rodriguez
, 169 Ill. 2d at 188-89.  That the two acts were related to each other does not preclude multiple convictions.  See 
Rodriguez
, 169 Ill. 2d at 189.  Therefore, we reject defendant's contention that the use of a fraudulently obtained credit card to buy things constituted the gravamen of both counts.  Although defendant bought things, the section of the computer fraud statute under which defendant was charged and convicted does not require that defendant obtain goods; presumably, it is enough that defendant obtained control over the bank's money by controlling the credit card.

Having decided that defendant committed multiple acts, we now must determine whether either offense is a lesser-included offense.  
Rodriguez
, 169 Ill. 2d at 186.  We use the charging-instrument approach in identifying lesser-included offenses.  
People v. Flynn
, 341 Ill. App. 3d 813, 831 (2003).  Under this approach, an offense is deemed to be a lesser-included offense if it is described by the charging instrument.  
People v. McLaurin
, 184 Ill. 2d 58, 104 (1998).  At a minimum, the instrument charging the greater offense must set forth the main outline of the lesser offense.  
McLaurin
, 184 Ill. 2d at 104-05.  In this case, the lesser offense, computer fraud, is not a lesser-included offense of the greater offense, theft.

We recently decided a similar case in 
People v. Flynn
, 341 Ill. App. 3d 813 (2003).  In that case, the defendant was charged and convicted of theft, a Class 3 felony (see 720 ILCS 5/16--1(b)(4) (West 2000)), and home repair fraud, a Class 4 felony (see 815 ILCS 515/4(a) (West 2000)).  The indictment for home repair fraud alleged that the defendant " 'knowingly entered into a contract for home repair with Timothy Howard and used deception to induce such person to enter into that contract.' "  
Flynn
, 341 Ill. App. 3d at 831.  The indictment for theft, the greater offense, alleged that the defendant " 'knowingly obtained, 
by deception
, control over the property of Timothy Howard, *** intending to deprive Timothy Howard of the use and benefit of the property, 
in that defendant entered into a contract for home repair with Timothy Howard
 in which Timothy Howard issued a check to defendant to perform work at Timothy Howard's home, 
and at the time defendant entered into said contract, he knew such work would not be performed
, and said defendant thereafter cashed the check.' "  (Emphasis in original.)  
Flynn
, 341 Ill. App. 3d at 831.  We found that the indictment for theft set out the main outline of the home repair fraud offense in that it required proof that the defendant fraudulently entered into a home repair contract with the victim.  
Flynn
, 341 Ill. App. 3d at 831.

Here, defendant was charged with a Class 2 felony (theft) (see 720 ILCS 5/16--1(b)(5) (West 2002)) and a Class 3 felony (computer fraud) (see 720 ILCS 5/16D--5(b)(3)(ii) (West 2002)).  The indictment for computer fraud alleges that defendant "knowingly 
accessed or caused to be accessed a computer
 and 
obtained goods and financing
 in connection with a scheme in which said goods and financing was obtained 
using the personal identification information of Paul Keller
."  (Emphasis added.)  The indictment for theft, the greater offense, alleges that defendant "knowingly obtained, 
by deception
, control over property of Bank of Americia [
sic
], said property being U.S. Currency, having a total value in excess of $10,000.00, with the intent to permanently deprive the owner of the benefit of the property, in that defendant, without authority 
used a credit card obtained in the name of Paul Keller to purchase items and obtain cash
."  (Emphasis added.)  Unlike the theft indictment in 
Flynn
, the indictment for theft in this case does not set out the main outline of the computer fraud offense.  The theft indictment does require proof that defendant fraudulently obtained a credit card in Paul Keller's name, but the essential element of computer fraud is missing -- accessing a computer or causing one to be accessed.  Although the charging instrument need not expressly allege all the elements of the lesser offense, they must be necessarily implied.  
People v. Bussan
, 306 Ill. App. 3d 836, 839-40 (1999).  The theft indictment does not necessarily imply the element of accessing a computer.  Indeed, had the jury determined that defendant's actions were fraudulent but that there was insufficient evidence to show that defendant accessed a computer to perpetuate that fraud, defendant nonetheless would be guilty of theft under the indictment.  Therefore, defendant's convictions of both computer fraud and theft do not violate the one-act, one-crime rule.

III. CONCLUSION

We find that defendant's counsel was effective and that the computer fraud conviction did not violate the one-act, one-crime rule.  The decision of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.