2022 IL App (2d) 210149-U
No. 2-21-0149
Order filed February 28, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-1231 |
| VICTOR TORNEZ-SANCHEZ, | ) ) | Honorable John J. Kinsella, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Bridges and Justice McLaren concurred in the judgment.

**ORDER**

¶ 1    *Held*:    At defendant's sentencing for the murder of his ex-girlfriend, trial counsel was not ineffective for failing to object to double hearsay testimony from a police officer as to statements in police reports relating to defendant's prior battery of the victim. The trial court had wide discretion to admit hearsay at sentencing, and the admission of the evidence did not prejudice defendant where there was ample unchallenged evidence that defendant had battered and intimidated the victim in the past.

¶ 2    Defendant, Victor Tornez-Sanchez, pleaded guilty to first-degree murder (720 ILCS 5/9-1(a)(1) (West 2016)) and was sentenced to 45 years' imprisonment. At issue in this appeal is whether defense counsel was ineffective when he failed to object to double hearsay testimony

presented at defendant's sentencing hearing. We determine that counsel was not ineffective. Accordingly, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4     On the night of June 18, 2017, defendant, who had been drinking and using cocaine at a party, waited outside the Bensenville apartment building where Olivia Renteria lived. Renteria was defendant's ex-girlfriend and the mother of his young daughter. When Renteria arrived home from a date with her boyfriend, defendant stabbed her with a knife at least three times. Renteria died from her injuries. Defendant fled the scene, changing out of his white shirt and into dark clothes to avoid being seen. Although defendant planned to flee to Mexico, he agreed to turn himself in after talking to his sister. Defendant was charged with five counts of first-degree murder (*id.* § 9-1(a)(1), (a)(2)). The State intended to seek an extended-term sentence because the murder was cold, calculated, and premeditated. See *id.* § 9-1(b).

¶ 5     On May 24, 2019, defendant pleaded guilty to one count of first-degree murder (*id.* § 9-1(a)(1)), and the remaining four counts were dismissed. Although no sentencing agreement was reached, the State did not seek an extended-term sentence. Thus, the parties characterized the plea as "largely[ ] a blind plea." After a hearing, the trial court accepted the guilty plea, finding it knowingly and voluntarily made.

¶ 6     The trial court held a sentencing hearing on September 30, 2019. Evidence showed that the relationship between defendant and Renteria was volatile. Detective Sal Herrera testified about three incidents—occurring in May, June, and July 2015—where defendant acted violently toward Renteria or intimidated her.

¶ 7     In May 2015, defendant came home intoxicated and high on cocaine. He made a great deal of noise, and Renteria asked him to be quiet because their daughter and Renteria's son were

sleeping. The couple argued, and defendant punched Renteria in the face. Renteria's sister, Perla, who also lived in the apartment, attempted to separate the couple. Defendant grabbed a piece of wood from an unassembled crib and struck Perla on the back of her head. Although defendant fled the scene, he turned himself in the next day. Defendant was found guilty of domestic battery, sentenced to conditional discharge, and ordered to have no contact with Renteria.[1]

¶ 8 One month later, in June 2015, defendant called Renteria, asking her if he could enter the apartment to retrieve some things. When she refused, he entered the apartment when no one was home, slashed the cushions of two couches, and stole a television. While the police spoke to Perla, defendant called Perla and told her that he destroyed things in the apartment because he had paid for half of them. No charges were filed against defendant.

¶ 9 In July 2015, while Renteria and Perla were sleeping, defendant pounded on the apartment's window, screamed, and attempted to enter the home. When the police arrived, defendant fled. Defendant eventually told the police where he was, and they arrested him. During the arrest, the police served him with an order of protection that Renteria had obtained. Defendant was charged with disorderly conduct, and a default judgment was ultimately entered against him.

¶ 10 Deputy Chief Eric Zodrow testified that he was a member of the major crimes task force and, in that capacity, investigated Renteria's murder. During the investigation, he reviewed various police reports, from which he learned of prior instances of contact between defendant and Renteria. Relying on those reports, Deputy Chief Zodrow gave the following accounts of incidents

---

[1] A petition to revoke was filed seven months later. The record does not reflect how the petition was resolved.

between defendant and Renteria in September and December 2016 as well as Renteria's murder in June 2017.[2]

¶ 11   Deputy Chief Zodrow testified that, on September 18, 2016, the Illinois State Police (ISP) were called to the scene of a possible domestic battery occurring on the Barrington Road exit ramp of Interstate 90 (I-90).   The two individuals involved were later identified as defendant and Renteria.   The ISP and the Hanover Park Police Department investigated and discovered that defendant and Renteria, with their six-year-old daughter, had been on their way home from a party where they had both been drinking.   They began arguing.   Renteria asked defendant to pull over, defendant refused, and Renteria grabbed the steering wheel.   Defendant then bit and punched Renteria.   Defendant pulled over, exited the car, and approached Renteria.   Defendant punched Renteria in the face, kicked her arm, and struck her in her chest and neck.   Renteria yelled for help from a highway maintenance worker who was in the area.   The maintenance worker called the ISP, but defendant got back in the car and drove away.   The Hanover Park Police Department located defendant's car in a parking lot.   Defendant admitted biting and striking Renteria.   Defendant was not charged for this offense.

¶ 12   Defendant did not object to Deputy Chief Zodrow's testimony concerning the September 18, 2016, incident.

---

[2] Regarding the September 2016 incident, Deputy Chief Zodrow indicated that he "[went] through and review[ed] prior instances of contact between the defendant *** and [Renteria]." Concerning the December 2016 incident, Deputy Chief Zodrow stated that he "[had] the opportunity to review reports."

¶ 13    Deputy Chief Zodrow testified that, in December 2016, defendant entered the Hanover Park apartment Renteria shared with a male roommate. The roommate exited the shower and saw defendant. Defendant asked the roommate where Renteria was. The roommate refused to tell defendant and called Renteria, who ordered defendant to leave and said that she would file a police report. When Renteria arrived at the police department, defendant approached her in the parking lot, asking her not to make the report. Defendant followed Renteria to the door of the police department and then left. While filing the report, Renteria told the police that defendant wanted to reconcile and get back together. Renteria also told the police that, even after obtaining the order of protection, she continued to talk to defendant because she needed child support from him and was afraid that he would hurt her or damage her property if she stopped speaking to him. Defendant was found guilty of violating an order of protection and was sentenced to 16 days in jail.

¶ 14    Deputy Chief Zodrow noted that, approximately six months after the December 2016 incident, defendant murdered Renteria. Defendant told the police that he killed Renteria because she was going to start a new life with her new boyfriend. Although defendant thought about harming Renteria's boyfriend, he ultimately decided not to do so. When questioned about the murder, defendant "admitted to the other instances of domestic violence," including the September 18, 2016, incident on the I-90 exit ramp. Specifically, defendant "admitted to punching *** and biting [Renteria]."

¶ 15    There was also evidence at the sentencing hearing that, when defendant was a baby, his mother took his sister and abandoned him and his father. This traumatized defendant. Defendant was suspended from high school for fighting and was expelled for drug use. While in jail awaiting resolution of the murder charges, defendant participated in various programs to better himself.

During the approximately 800 hours he spent in these programs, defendant served as a leader for and positively influenced fellow inmates. Defendant's prior criminal history consisted of seven driving-without-a-license offenses and three offenses against Renteria, arising from the May 2015, July 2015, and December 2016 incidents. In allocution, defendant expressed remorse and asked for leniency.

¶ 16    In its closing argument, the State briefly went through defendant's prior acts of violence and intimidation toward Renteria. Regarding the September 18, 2016, incident, the State mentioned only that defendant beat Renteria on the side of the road in front of a highway maintenance worker. Defense counsel also mentioned the September 2016 incident in closing argument. About that incident, counsel noted that (1) Renteria had been drinking, (2) she had grabbed the steering wheel from defendant while he was driving and while the couple's daughter was in the back seat, and (3) defendant was not charged regarding that incident.

¶ 17    The trial court sentenced defendant to 45 years in prison. In doing so, the court found it mitigating that defendant participated in programs the jail offered. The court found that defendant's criminal history was both (1) mitigating, because it was minimal, and (2) aggravating, because the offenses other than the traffic violations involved Renteria. Without elaborating, the court also found defendant's drug and alcohol abuse both mitigating and aggravating.

¶ 18    The court then addressed the murder. The court found the murder "gravely aggravating," as defendant laid in wait for Renteria, ambushed her when she arrived home, and ultimately killed her. The court noted that this was "extremely aggravating" because defendant had time to reassess what he was going to do and change his mind before he killed Renteria. The court asserted that the murder was "cold and calculated," "most heart-wrenching and disturbing" because defendant killed the mother of his child yet knew exactly how it feels to be abandoned by one's mother.

¶ 19    In separate motions, defendant moved the trial court to reconsider his sentence and withdraw his guilty plea.  In neither motion did defendant argue that the court should have excluded testimony about the September 18, 2016, incident.  The certificate that counsel filed per Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) did not indicate that he discussed with defendant any errors that arose during the guilty plea proceedings.  Defendant appealed, and the appellate defendant moved for a summary remand to have a proper Rule 604(d) certificate filed.  We granted that motion.

¶ 20    On remand, counsel filed a proper Rule 604(d) certificate and a combined motion to withdraw the guilty plea and reconsider the sentence.  Defendant contended that (1) his plea was not voluntary, (2) his sentence was excessive in light of the mitigating evidence, and (3) his rehabilitative potential was not properly weighed by the trial court.  Defendant never argued that evidence of the September 18, 2016, incident was improperly admitted.

¶ 21    The trial court denied the motion, finding that "the most obvious and primary point of aggravation was that the defendant did lay in wait and certainly had time to reflect upon and premeditate his acts, his conduct in attacking this woman and stabbing her to death."  This timely appeal followed.

¶ 22                                II. ANALYSIS

¶ 23    At issue in this appeal is whether defense counsel was ineffective.  To establish that counsel was ineffective, "defendant must [(1)] overcome the presumption that counsel's acts might have resulted from a sound defensive strategy" and (2) establish that " a 'reasonable probability' [exists] that the trial judge would have imposed a lesser sentence if [defense] counsel had not erred." *People v. Billups*, 2016 IL App (1st) 134006, *Id.* ¶¶ 14, 16 (quoting *People v. Steidl*, 177 Ill. 2d 239, 257 (1997)).  "Failure to establish either prong is fatal to the claim" that counsel was

ineffective. *People v. Pineda*, 373 Ill. App. 3d 113, 117 (2007). Claims of ineffective assistance of counsel are generally subject to a bifurcated standard of review. *People v. Davis*, 353 Ill. App. 3d 790, 794 (2004). However, we review *de novo* defendant's claim because defendant did not raise counsel's ineffectiveness below. On that issue, the trial court made no findings of fact to which we must defer. *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24.

¶ 24    Defendant argues that defense counsel was ineffective for failing to object to Deputy Chief Zodrow's testimony at sentencing about the September 18, 2016, incident between defendant and Renteria. "The determination of which objections to raise is a matter of trial strategy." *People v. Johnson*, 331 Ill. App. 3d 239, 248 (2002). "Generally, matters of trial strategy will not support a claim of ineffective assistance of counsel unless counsel failed to conduct any meaningful adversarial testing." *People v. Patterson*, 217 Ill. 2d 407, 441 (2005).

¶ 25    Defendant claims that, because Deputy Chief Zodrow's statements about the September 18, 2016, incident constituted double hearsay, no reasonable trial strategy existed that justified counsel's failure to object. "Hearsay *** is an out-of-court statement offered in court to prove the truth of the matter asserted." *People v. Kliner*, 185 Ill. 2d 81, 150 (1998). Double hearsay is "an out-of-court statement within an out-of-court statement." *Goodwine State Bank v. Mullins*, 253 Ill. App. 3d 980, 994 (1993); see also *Lofton*, 2015 IL App (2d) 130135, ¶ 32.

¶ 26    Deputy Chief Zodrow's testimony was double hearsay because it was based on statements that the maintenance worker, Renteria, and defendant made to the ISP and Hanover Park police officers, who then recorded those statements in police reports. Defendant argues that the hearsay was uncorroborated by other properly admitted evidence. Thus, according to defendant, counsel was ineffective for not objecting to Deputy Chief Zodrow's testimony.

¶ 27    Generally, hearsay, or double hearsay, is inadmissible unless an exception applies.  See

*People v. Morales*, 2021 IL App (2d) 190408, ¶ 11.  The Illinois Rules of Evidence, which bar

hearsay (with certain exceptions), do not apply to sentencing hearings.  Ill. R. Evid. 1101(b)(3)

(eff. Sept. 17, 2019).  The rules thus embody a longstanding practice of courts:

> "[S]entencing hearings have long been exempt from the rules of evidence—in lowercase,
>
> since the exemption predates not only the 2013 amendment but the original codification of
>
> the Rules.  [Citations.]  We have always left it to the sound discretion of the trial court to
>
> determine whether hearsay is reliable enough to weigh in sentencing.  [Citations.]  If the
>
> trial court finds hearsay evidence relevant and reliable, the fact that it is hearsay affects its
>
> weight, rather than its admissibility.  [Citations.]  ***  In short, we routinely entrust trial
>
> judges with the discretion to decide whether hearsay evidence is reliable enough to be
>
> admitted at a hearing, and, if so, how much weight the hearsay evidence deserves."
>
> (Internal quotations omitted.)  *People v. Gibson*, 2018 IL App (1st) 162177, ¶ 139.

¶ 28    Accordingly, at sentencing hearings, "hearsay testimony is not *per se* inadmissible *** as

unreliable or as denying a defendant's right to confront accusers."  *People v. Foster*, 119 Ill. 2d

69, 98 (1987).  Rather, an objection on hearsay grounds goes to the weight, not the admissibility,

of the testimony.  *Id.*  In *Foster*, the supreme court reviewed its case law and noted that, in the

cases where it approved the admission of double hearsay, at least some part of the double hearsay

was corroborated by other evidence.  *Id.*  Nonetheless, the court noted that such testimony is not

inherently unreliable but is admissible where, for instance, the information was compiled during

an official investigation and was never directly challenged.  *Id.* at 98-99.

¶ 29    Here, counsel might have chosen not to object to Deputy Chief Zodrow's testimony about

the September 18, 2016, incident, because counsel wished to stress at sentencing closing argument

that Renteria was sometimes responsible for the couple's unstable relationship. Counsel might also have concluded that an objection to the testimony would have had little chance of success. Counsel would have been right to think so. The hearsay came from police reports that Deputy Chief Zodrow reviewed while investigating Renteria's murder. The reports were prepared pursuant to official investigations. Further, nothing in the record suggests that the reports' accuracy was ever challenged. Moreover, there was significant corroboration of the reports as they related to the September 18, 2016, incident. For example, defendant admitted to the police during the investigation of the murder that he had bitten and struck Renteria on September 18, 2016. Given this, we cannot conclude that trial counsel provided unreasonable assistance when he did not object to the double hearsay testimony. See *People v. Bell*, 234 Ill. App. 3d 631, 640 (1992) ("Defense counsel is not ineffective for failing to make losing motions or objections.").

¶ 30   Even if counsel should have objected to the double hearsay testimony, we cannot conclude the admission of that evidence prejudiced defendant. A review of the record shows that the hearsay testimony did not affect the sentence. Indeed, although both parties mentioned the September 18, 2016, incident briefly in closing arguments, the trial court never specifically mentioned the September 18, 2016, incident. To the extent that the trial court generally considered the September 18, 2016, incident in noting that Renteria's relationship with defendant was unstable, nothing suggests that the trial court placed any weight on Deputy Chief Zodrow's testimony about the September 18, 2016, incident. Rather, the trial court made very clear numerous times that the primary aggravating factor was the circumstances of the offense, which is "[t]he most important sentencing factor." *People v. Flores*, 404 Ill. App. 3d 155, 159 (2010).

¶ 31   Defendant argues that he was prejudiced in that "[t]here was substantial mitigating evidence presented that weighed in favor of a lower sentence, especially if the improper weight

afforded to the uncorroborated double hearsay testimony was removed from the other end of the scale." Nothing in the record suggests that the trial court failed to consider all mitigating evidence. Even assuming that the double hearsay testimony about the September 18, 2016, incident was improperly admitted, it was cumulative and insignificant in light of the remaining evidence. Specifically, there was unchallenged evidence that defendant had a history of battering and intimidating Renteria. Because of this other evidence—namely, the May, June, and July 2015 incidents and the December 2016 incident—we cannot conclude that counsel was ineffective even if he was unreasonable in not objecting to Deputy Chief Zodrow's double hearsay testimony about the September 18, 2016, incident. Simply put, a defendant's ineffective-assistance claim based on his trial counsel's failure to object to hearsay testimony cannot establish prejudice if (1) the admissible evidence against the defendant is overwhelming or (2) the inadmissible hearsay evidence is cumulative of admissible evidence. See, e.g., *People v. Theis*, 2011 IL App (2d) 091080, ¶¶ 41, 44; *People v. Alexander*, 354 Ill. App. 3d 832, 846-47 (2004); see also *People v. Torres*, 18 Ill. App. 3d 921, 929 (1974) ("Even if hearsay testimony is improperly admitted, reversal is not warranted where the same matter has been proved by properly admitted evidence.").

¶ 32                                    III. CONCLUSION

¶ 33    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 34    Affirmed.