THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMAL SHARIFPOUR, Defendant-Appellant.

Second District No. 2—08—0512

Opinion filed June 3, 2010.

O'MALLEY, J., specially concurring.

Thomas A. Lilien, of State Appellate Defender's Office, of Elgin, for appellant.

John A. Barsanti, State's Attorney, of St. Charles (Lawrence M. Bauer and Victoria E. Jozef, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCHOSTOK delivered the opinion of the court:

The defendant, Jamal Sharifpour, pled guilty to attempted aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 12—14(a)(2)) and was subsequently sentenced to 14 years' imprisonment. Following the denial of his motion to withdraw his guilty plea, the defendant filed a timely notice of appeal. On appeal, the defendant argues that the trial court erred in denying his motion to withdraw his guilty plea because (1) the surrounding circumstances rendered his plea involuntary and (2) his counsel was ineffective in failing to move for dismissal of the charges based on statutory and constitutional violations of his right to a speedy trial. We affirm.

On September 23, 1989, the defendant was arrested. The following day he was charged by complaint with one count each of attempted aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 12—14(a)(2)), aggravated criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12—15(a)(1)), and aggravated battery (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)). The defendant was released on bond that day. At the bond hearing, the trial court admonished the defendant of his rights, including the possibility that he could be tried *in absentia*. On October 17, 1989, the grand jury returned a four-count indictment supplanting the complaint. The defendant was charged with the same counts as contained in the complaint along with an additional count of aggravated battery. The charges arose from an incident on September 22, 1989, during which the defendant allegedly hit the victim with his car, forcibly removed her clothing, and fondled her breasts.

On September 27, 1989, following the defendant's arrest in the present case, the State moved to revoke the defendant's bail in two previously pending but unrelated cases: cases No. 89—CF—1252 and No. 89—CF—1253. The trial court granted the motion and issued a warrant. On October 4, 1989, two attorneys, retained by the defendant's father, entered appearances in all three cases. On October 5, 1989, when the defendant did not appear, the trial court entered a bond forfeiture in the three cases. The record indicates that at some point after the defendant's bond hearing, he had fled the country.

On March 6, 1990, case No. 89—CF—1252 proceeded to a jury trial *in absentia*. Following trial, the defendant was found guilty of attempted aggravated criminal sexual assault and sentenced to 12 years' imprisonment.

Thereafter, the State moved for trial *in absentia* in the present case. At a June 29, 1990, hearing, the trial judge who presided at the defendant's bond hearing testified that the defendant was present at that hearing and was represented by counsel. The trial judge further

testified that, at the bond hearing, he explained the defendant's rights, including the defendant's right to trial. He also informed the defendant that if he failed to appear in court, a trial could be held in his absence and he could be convicted and sentenced in his absence. The State requested an October trial date so that it would have time to comply with the statutory notice requirements for a trial *in absentia*. The State indicated that it would send notices to the defendant at addresses in West Dundee, Illinois, and in Turkey, where the defendant was believed to be residing. The trial court found that the requirements for conducting a trial *in absentia* had been met and set the case for trial on October 15, 1990.

A jury trial *in absentia* commenced on October 15, 1990. The defendant was represented by counsel. The trial court denied the defense motion to bar the trial *in absentia*. Thereafter, the victim testified in detail concerning the incident, and law enforcement personnel testified concerning their investigations. During trial, the State dismissed the two counts of aggravated battery. The jury found the defendant guilty of attempted aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 12—14(a)(2)) and aggravated criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12—15(a)(1)). On December 6, 1990, following the denial of the defendant's posttrial motions, the trial court vacated the conviction of aggravated criminal sexual abuse and sentenced the defendant to 15 years' imprisonment for attempted aggravated criminal sexual assault, consecutive to the defendant's sentence in case No. 89—CF—1252. Thereafter, the defendant filed a notice of appeal from the court's judgment in each case. On the State's motion, this court dismissed the appeals due to the defendant's continued absence.

In August 2000, shortly after returning to the United States, the defendant was taken into custody in New York. On September 14, 2000, the defendant returned to Illinois and appeared in court. The State requested that the defendant be remanded to the Department of Corrections (DOC). As of September 15, 2000, the defendant was sent to the DOC to begin serving his sentence. On October 13, 2000, the defendant filed a motion to have his convictions in both cases declared void because the procedures for trial *in absentia* had not been followed. On November 29, 2000, the defendant's attorney withdrew and a public defender was appointed to the defendant's case.

On February 15, 2001, the public defender filed a motion to have the defendant's convictions in both cases declared void based on the alleged failure to comply with the statutory requirements regarding trial *in absentia*. The defendant submitted a supporting affidavit indicating that he was not aware that the cases had been set for trial.

On May 10, 2001, a hearing was held on the defendant's motion. The defendant argued that before a trial *in absentia* could be held, the statute required the State to prove he was willfully avoiding trial and the clerk to send the defendant notice of the trial date via certified mail at the defendant's last known address. The defendant argued that the State had not proved that the defendant was willfully avoiding trial. The defendant pointed out that the attorney present at the defendant's bond call submitted an affidavit indicating that at the hearing the defendant never looked up and never made any sort of verbal recognition of what was happening. The defendant argued that he did not understand anything at the bond hearing. Additionally, the defendant argued that although the State's Attorney's office had sent notices to two addresses by regular post, the clerk's office did not send notice of the trial date via certified mail. The State conceded that the notice of trial that was sent by the State and not by the clerk was not in compliance with the statutory requirement of certified mail. The record reveals that the State's Attorney's office sent notice to the defendant in the following ways: (1) notice was sent by certified mail to the defendant's home address in West Dundee; (2) notice was sent by registered mail to the defendant's address in Turkey; and (3) notice was sent by regular mail to the defendant's attorney.

On May 31, 2001, the trial court granted the defendant's motion to vacate his convictions. The trial court found that "no notice was sent by certified mail or even by regular mail to the defendant. There was notice sent by the State's Attorney's Office with proof of service, but it was not sent certified." As a result, the trial court found "that both convictions are void, and [the defendant] is entitled to a new trial on both matters." However, on May 9, 2008, following a hearing on the defendant's supplemental motion to withdraw his guilty plea, the trial court clarified its finding and explained that "the court order was voidable and not void" and that the trial court had jurisdiction.

On June 15, 2001, the defendant filed his demand for a speedy trial in the present case. On August 20 and 21, 2001, a bench trial was held in case No. 89—CF—1252, and the trial court found the defendant guilty of attempted aggravated criminal sexual assault. On September 7, 2001, at a status date for case No. 89—CF—1252, the defendant appeared to enter a "cold" guilty plea to the charge of attempted aggravated criminal sexual assault in the present case. The State indicated that, in exchange for the plea, the other counts in the case, along with the charge in case No. 89—CF—1253, would be dismissed. The defendant acknowledged that he understood the agreement.

Thereafter, the trial court proceeded to admonish the defendant pursuant to Supreme Court Rule 402 (177 Ill. 2d R. 402). The trial

court explained the nature of the charge, the minimum and maximum sentences, and the fact that any sentence would be mandatorily consecutive to his sentence in case No. 89—CF—1252. The trial court explained that by pleading guilty the defendant was waiving his right to trial, including the rights to have an attorney present at trial, to present evidence, to cross-examine the State's witnesses, and to appellate review of any trial errors. In response to questions by the trial court, the defendant indicated that he was giving up his rights freely and voluntarily and that no one was forcing him to plead guilty. The defendant also indicated that he had discussed the matter with his attorney but that he was satisfied with his representation only to "a degree." The defendant expressed concern because he could not remember what happened 12 years ago and there were no witnesses coming forward on his behalf. The defendant questioned whether his attorneys had done their best to contact potential alibi witnesses. The trial court explained that the case could be set for trial and that the defendant would then have the opportunity to subpoena witnesses. The trial court then recessed the proceedings to allow the defendant to confer with his counsel.

When court resumed about an hour later, the defendant informed the trial court that he had had enough time to confer with his attorney and that he had nothing more to tell the court. The defendant indicated that he understood that by signing the plea-of-guilty form, he was giving up his rights. The defendant acknowledged that the trial court had explained those rights earlier. After further admonishments concerning the counts being dismissed, the defendant indicated that he was not under the influence of drugs or alcohol, that the extent of his education was "three years of university," and that his decision was to plead guilty. Thereafter, the assistant State's Attorney presented a factual basis for the plea. The defendant stipulated to the factual basis. After the defendant reiterated his desire to plead guilty, the trial court accepted the plea.

On December 5, 2001, following a hearing, the trial court sentenced the defendant to 11 years' imprisonment in case No. 89—CF—1252 and a consecutive 14 years' imprisonment in the present case. The trial court concluded the hearing by advising the defendant that he could preserve his right to appeal by filing a notice of appeal within 30 days. On January 10, 2002, the parties appeared in court for a hearing on the defendant's motion to reconsider his sentence. The matter had to be rescheduled because defense counsel had not yet received or reviewed transcripts from the defendant's plea of guilty or from the sentencing hearing. The trial court further noted that it had not previously admonished the defendant concerning his appeal rights

from his guilty plea. The trial court then admonished the defendant concerning the filing of a motion to withdraw his guilty plea. On February 26, 2002, the trial court denied the defendant's motion to reconsider his sentence. At the close of that hearing, the defendant filed a notice of appeal in case No. 89—CF—1252, and the Office of the State Appellate Defender was appointed. Additionally, the defendant's trial counsel requested and received time to file a motion to withdraw the defendant's guilty plea in this case.

On March 25, 2002, the public defender filed a motion to withdraw the defendant's guilty plea. Before the motion was heard, private counsel entered an appearance on the defendant's behalf. The public defender was then permitted to withdraw. On July 26, 2002, the defendant filed an amended motion to withdraw his guilty plea. On August 16, 2002, a hearing was held on the motion. The defendant testified that following the guilty finding in case No. 89—CF—1252 but before sentencing, his attorney spoke with him at the Kane County jail. The defendant asked his attorney what would happen if he pled guilty in this case. The attorney said it would depend on the judge. The attorney indicated that she would request a Rule 402 conference. The attorney also indicated that from her point of view, the defendant's sentence would not be long. The attorney stated that the potential sentence was 4 to 15 years or probation. The defendant testified that his attorney did not make any promises. She just stated that, based on her experience, she believed that the defendant would receive a sentence on the lower end of the scale if he pled guilty. The defendant concluded from her statement that a lesser sentence meant a sentence in the range of four to seven years. His attorney also explained that there were advantages to pleading guilty, such as the defendant being sent back to the DOC sooner, where he received more privileges. She also informed the defendant that a guilty plea would be considered in sentencing the defendant in case No. 89—CF—1252. His attorney also stated that the assigned judge seemed to be lenient.

The defendant further testified that when he entered his guilty plea, he understood that it was a cold plea, meaning that the trial court would determine his sentence. The defendant acknowledged that he was admonished concerning the charges, the possible punishments, and the rights he had if he wanted to proceed to trial. The defendant testified that he understood his rights when he pled guilty. The defendant testified that when the trial court questioned him concerning his satisfaction with defense counsel, he became confused and started having second thoughts about pleading guilty. The defendant acknowledged that the trial court recessed the hearing so that the defendant would have time to resolve his confusion. The defendant

testified that the recess was about two hours long. During the recess he was placed back in the holding cell. At that time he told his attorney that he was not guilty. His attorney told him to think about his plea, and then she left. Just prior to the return to court, his attorney returned to his holding cell. The defendant reiterated his innocence. The defendant testified that his attorney seemed upset. She told him to do what he wanted to do. She then told the defendant that if he pled guilty, the trial court would take that into consideration and the defendant would get a lesser sentence. She also stated that the plea would be taken into account in the sentence for case No. 89—CF—1252. Before she left she "promised" the defendant that he would get a lesser sentence. The defendant assumed a lesser sentence would be four to six years. Because of his attorney's promise, the defendant decided to proceed with his guilty plea. If not for her promise, the defendant would not have pled guilty, because he was innocent of the acts charged.

On cross-examination, the defendant acknowledged that when he spoke with his attorney at the Kane County jail, his attorney had explained the sentencing range of 4 to 15 years and the possibility of probation. The defendant acknowledged that his attorney indicated that, in her opinion, he would receive a lesser sentence by pleading guilty. He "assumed" a lesser sentence would be four to six years. His attorney never stated that a lesser sentence meant four to six years in any of their conversations. The defendant acknowledged that when he pled guilty he knew the sentencing range and that his attorney had never promised a specific sentence. The defendant acknowledged that he had testified that his attorney seemed upset just prior to court resuming after the recess. The defendant testified that she seemed upset in that she "sighed." However, she was not yelling at him or threatening him in any way. Finally, the defendant acknowledged that he did in fact receive a lesser sentence in this case, by one year. The defendant did not recall having been told that the State would dismiss case No. 89—CF—1253 if he entered the cold plea.

Ellie Najafi, the defendant's wife, testified that she was present on September 7, 2001, when the defendant entered his plea. She remembered that there was a recess in the proceedings. She believed that the recess lasted about an hour and a half. During that recess she spoke with the defendant's attorney. In contrast to previous times when she had spoken with the defendant's attorney, the attorney seemed overwhelmed and displeased that the defendant had changed his mind about entering the guilty plea.

Attorney Beth Peccarelli, a public defender for over 11 years, testified for the State that she was assigned to represent the defendant in

this case and in case Nos. 89—CF—1252 and 89—CF—1253. Before trial in case No. 89—CF—1252, there had been a Rule 402 conference to attempt to learn the trial court's feelings concerning sentencing in all the cases, but the trial court did not give any indication of the sentences it would impose in the event of a cold plea. She had so informed the defendant. Prior to the date of the plea hearing in this case, she and the defendant discussed the possibility of pleading guilty. She remembered having conversations over the phone and at the courthouse. She could not remember if they spoke at the Kane County jail. During those conversations, she informed the defendant that a cold plea meant that the trial judge would determine his sentence. She also told him that the State was willing to dismiss case No. 89—CF—1253 in exchange for a cold plea in the present case. She told the defendant that a cold plea would be considered a mitigating factor in sentencing, because he would be taking responsibility for his actions, and that she thought that the trial court would look favorably on that. She testified that at the bench trial in case No. 89—CF—1252 the victim was very sympathetic and tearful. She suggested to the defendant that trial might not be the best approach in the present case. She further testified that she did not think that the defendant's sentence would be as "draconian" as his sentence following the trial *in absentia*. She remembered telling the defendant that the new sentencing judge would be more reasonable than the original sentencing judge. She never promised the defendant probation. She explained to him that the sentencing possibilities were 4 to 15 years and also probation. She told the defendant she was hopeful that he would get a sentence closer to the minimum. She and the defendant discussed the ideal disposition to be probation in one case and a minimum sentence in the other. However, she never promised the defendant anything. She was not upset when he was reconsidering his plea. She recalled telling the defendant that she thought he would be found guilty if the victim testified consistently with the police report. Nonetheless, although she did believe it was better for the defendant to plead guilty, it did not matter to her one way or the other.

On cross-examination, attorney Peccarelli testified that when she used the term "lesser sentence" while speaking with the defendant concerning his plea, she was referring to a sentence closer to the minimum term. She in fact communicated to the defendant that a lesser sentence meant a sentence near the minimum. She believed a minimum sentence would have been fair. On September 7, 2001, she reiterated to the defendant that she believed that if he pled guilty, the trial court would impose a sentence close to the minimum. The defendant then indicated that he wanted to plead guilty. Attorney Pec-

carelli acknowledged that there was a recess at the plea hearing because the defendant seemed to have misgivings about pleading guilty. The recess was close to an hour. Her belief was that the defendant had misgivings because he did not think he had committed the crime and he did not think the State could prove the case. She was frustrated when the defendant started reconsidering his plea. When she went back to see the defendant in the holding cell prior to returning to court, the defendant told her that he wanted to plead guilty.

At the close of the hearing, the trial court denied the defendant's motion to withdraw his guilty plea. The trial court stated that the significant sentence in this case was fair in light of the evidence presented at the sentencing hearing. Although the testimony showed that the defendant and his attorney were hopeful for a lesser sentence, the trial court found that the defendant had not been promised any specific sentence. The trial court noted that whether there had been any promises was a question of fact, and it believed attorney Peccarelli's testimony that she did not make any promises. Finally, the trial court determined that the defendant had been adequately admonished at the time of his plea. The trial court admonished the defendant that he had 30 days to file a notice of appeal and that if he could not afford an attorney, one would be appointed and he would be entitled to a copy of the transcript at that time.

Thereafter, the defendant filed a timely notice of appeal. On December 19, 2003, this court reversed the denial of the motion to withdraw the guilty plea and remanded for additional proceedings because defense counsel failed to file a certificate of compliance with Rule 604(d) (210 Ill. 2d R. 604(d)). See *People v. Sharifpour*, No. 2—02—1046 (2003) (unpublished order under Supreme Court Rule 23).

On September 10, 2004, the defendant filed a second motion to withdraw his guilty plea. The defendant argued that his attorney's advice was tantamount to a promise of a lesser sentence and that the trial court erred in failing to readmonish him following the recess at the plea hearing. On October 14, 2005, a hearing was held on that motion. Attorney Peccarelli and the defendant testified at the hearing. Their testimony was substantially similar to their testimony at the August 16, 2002, hearing. The defendant's testimony differed in that he testified that attorney Peccarelli had not made any promises of a lower sentence. He testified, however, that her belief that he would receive a lower sentence prompted him to plead guilty. The defendant acknowledged the inconsistency with his previous testimony but reiterated that he had erred when he testified that attorney Peccarelli had promised him a lesser sentence. On November 18, 2005, the trial court

denied the defendant's second motion to withdraw his guilty plea. The trial court determined that the defendant had been fully admonished when he entered his plea. The trial court acknowledged that there was an hour to an hour-and-a-half recess in the proceedings but found that the admonishments were nonetheless sufficient. The trial court found that the defendant entered his plea freely and voluntarily. The trial court admonished the defendant that he had 30 days to file an appeal. On December 2, 2005, the defendant filed a timely notice of appeal.

In that appeal, the defendant argued that (1) his plea was involuntary because he was not properly admonished and he was induced by his attorney's representations as to the sentence he would receive; (2) he was not properly admonished pursuant to Rule 605(b) (188 Ill. 2d R. 605(b)); and (3) his counsel was ineffective in failing to move for dismissal on speedy-trial grounds. On July 16, 2007, based on a determination that the defendant had not received complete Rule 605(b) admonishments, this court remanded the case to allow the defendant to file a new postplea motion. Specifically, we determined that the trial court did not admonish the defendant that any issue he failed to raise in a written postplea motion would be forfeited for purposes of appeal. A remand was deemed appropriate because the defendant had not raised his ineffective-assistance-of-counsel claim in a postplea motion. We declined to reach the issue of the voluntariness of the defendant's plea that had been the subject of two previous hearings, noting that the issue would be moot if the trial court vacated the defendant's guilty plea on remand. See *People v. Sharifpour*, No. 2—05—1284 (2007) (unpublished order under Supreme Court Rule 23).

On November 27, 2007, on remand, the defendant filed a supplemental postplea motion. In that motion, the defendant alleged that his counsel was ineffective in failing to move for dismissal of the charges based on violations of the defendant's right to a speedy trial. The defendant argued that both his statutory and his constitutional rights to a speedy trial had been violated. Specifically, the defendant argued that his original conviction was void because the trial *in absentia* had been conducted in the absence of compliance with statutory notice requirements. The defendant further argued that because his conviction was void and of no legal effect, his statutory right to a speedy trial began when he was taken into custody in 2000. The defendant argued that more than 120 days had passed between when he was taken into custody and when he pled guilty in 2001. With respect to his constitutional right to a speedy trial, the defendant argued that the delay from when he was first charged in 1989 until 2001 was so long as to be presumptively prejudicial and that he was actually prejudiced by the loss of potential alibi witnesses.

In response, the State argued that the judgment of conviction from the trial *in absentia* was not void, but rather voidable, and that the defendant's statutory and constitutional rights to a speedy trial had not been violated. With respect to the defendant's statutory right to a speedy trial, the State argued that because the defendant had been tried and convicted, the defendant's speedy-trial right did not become applicable until the defendant's conviction was vacated on May 31, 2001. The State further argued that the defendant was brought to trial within 120 days of that date. With respect to the defendant's constitutional right to a speedy trial, the State argued that no violation had occurred because the defendant had fled the country after being charged and the evidence demonstrated the State's due diligence in searching for the defendant in his absence.

On May 9, 2008, the trial court denied the defendant's supplemental postplea motion. The trial court found that the conviction resulting from the defendant's 1990 trial *in absentia* was voidable, but not void, because the trial court had jurisdiction over the trial and the failure to notify the defendant of the trial date via certified mail was merely a procedural error. The trial court further found that the defendant's statutory right to a speedy trial had not been violated because the defendant had caused or agreed to various continuances. The trial court also found that the defendant had failed to demonstrate a violation of his constitutional right to a speedy trial because the defendant had fled the jurisdiction while aware of the pending charges and the State had diligently tried to locate him thereafter. The defendant subsequently filed a timely notice of appeal and this court appointed the Office of the State Appellate Defender.

On appeal, the defendant argues that the trial court erred in denying his motion to withdraw his guilty plea. A decision on a defendant's motion to withdraw his guilty plea is a matter within the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *People v. Manning*, 227 Ill. 2d 403, 412 (2008). An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). A defendant does not have an absolute right to withdraw his guilty plea, but he should be allowed to withdraw his plea if doing so would correct a manifest injustice under the facts involved. *People v. Hillenbrand*, 121 Ill. 2d 537, 545 (1988). A plea may be withdrawn where it is based on a misapprehension of the facts or the law, or on misrepresentations by defense counsel, where there is doubt as to the defendant's guilt, where the defendant has a defense worthy of consideration, or where the ends of justice will be better

served by taking the case to trial. *People v. Davis*, 145 Ill. 2d 240, 244 (1991).

■ The defendant first argues that the trial court erred because his plea was involuntary as it was based on his attorney's "promise" that he would receive a near-minimum sentence. We find this argument to be without merit. The record refutes the defendant's contention that his trial attorney promised him a near-minimum sentence for pleading guilty. At both hearings on the defendant's motion to withdraw his guilty plea as involuntary, his attorney testified that she did not make any promises concerning the defendant's sentence for pleading guilty.[1] She merely advised the defendant that, based on her experience, a guilty plea would result in a sentence close to the minimum. Moreover, at the October 14, 2005, hearing addressing this issue, the defendant testified that his attorney did not make any promises as to a lesser sentence. It is well settled that "a guilty plea made in reliance upon advice of counsel estimating a sentence to be expected is a voluntary plea." *People v. Corby*, 139 Ill. App. 3d 214, 218 (1985).

The defendant further argues that even in the absence of any promises, he had a reasonable mistaken impression that he would receive a sentence near the minimum if he pled guilty. See *Davis*, 145 Ill. 2d at 244 (a guilty plea may be vacated if there is "substantial objective proof showing that a defendant's mistaken impressions were reasonably justified"). However, "the burden is on the defendant to establish that the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression." *Davis*, 145 Ill. 2d at 244. The defendant has failed to meet this burden. Attorney Peccarelli testified that she informed the defendant that a cold plea meant that the trial court would determine his sentence. Attorney Pecarrelli explained to the defendant that the sentencing range was 4 to 15 years' imprisonment, or probation. She testified that she had informed the defendant that, during a Rule 402 conference, the trial court had not given any indication of the sentence that would be imposed. She also testified that she told the defendant she was "hope-

---

[1]In a footnote in its appellee brief the State argues that, because the parties stipulated at the October 14, 2005, hearing on the defendant's motion to withdraw his guilty plea that the testimony at the August 16, 2002, hearing on the same issue would be considered only for impeachment purposes, we cannot consider the testimony at the 2002 hearing. We find this argument forfeited for failure to cite any authority to support that proposition. See 210 Ill. 2d R. 341(h)(7) (failure to cite authority forfeits argument). Moreover, we note that we may affirm the trial court on any basis appearing in the record. *People v. Dinelli*, 217 Ill. 2d 387, 403 (2005).

ful" for a near-minimum sentence but that she did not make any promises. Accordingly, any impression on the part of the defendant that he was guaranteed a near-minimum sentence for pleading guilty was not objectively reasonable. To the extent that the defendant subjectively believed that he would receive a shorter sentence by pleading guilty, this is not grounds for permitting withdrawal of his plea. See *People v. Walston*, 38 Ill. 2d 39, 42 (1967) (a defendant's belief that he will receive a shorter sentence by pleading guilty is not grounds for permitting withdrawal of his plea when his expectation has not been realized).

Moreover, the evidence demonstrates that an objectively reasonable person would have understood that there were significant advantages to pleading guilty. Attorney Pecarrelli testified that although she did not promise a lesser sentence she did tell the defendant that there would be advantages to a guilty plea. She informed the defendant of her belief that a guilty plea would act as a mitigating factor, that the victim's testimony at trial would be very emotional and arouse sympathy, that she had been unable to locate any of the alleged alibi witnesses, and that those potential witnesses' statements as contained in the police reports were not helpful to the defendant's alibi defense. Furthermore, she explained the State's offer to dismiss the remaining charges in this case and in case No. 89—CF—1253 in exchange for a cold plea. Accordingly, the evidence supports a determination that the defendant's guilty plea was based on these advantages and not on a mistaken impression regarding his sentence.

At oral argument, the defendant insisted that *Davis* supported his contention that the trial court should have granted his motion to withdraw his guilty plea. In *Davis*, prior to the defendant's guilty plea, defense counsel informed the defendant that he was eligible for the Treatment Alternatives to Street Crimes (TASC) program. *Davis*, 145 Ill. 2d at 245. Additionally, the trial court admonished the defendant that he was eligible for probation and, after accepting the defendant's plea, ordered an evaluation of the defendant's qualifications for TASC. *Davis*, 145 Ill. 2d at 245, 248. It was later discovered that due to the defendant's prior criminal record, he was ineligible for probation and for TASC. *Davis*, 145 Ill. 2d at 248. Nonetheless, the trial court denied the defendant's motion to withdraw his guilty plea. *Davis*, 145 Ill. 2d at 243. On appeal, the *Davis* court determined that, although either the defendant's misapprehension as to his eligibility for TASC or the improper admonishments, alone, may be insufficient to disturb the trial court's ruling, the cumulative effect of the errors warranted the withdrawal of the defendant's guilty plea. *Davis*, 145 Ill. 2d at 250-51.

The court determined that the combined errors led the defendant to incorrectly believe that he would be eligible for a sentence other than incarceration. *Davis*, 145 Ill. 2d at 251. In the present case, the defendant was properly advised by both defense counsel and the trial court, prior to his guilty plea, as to the sentencing range. As such, we find the defendant's reliance on *Davis* unpersuasive.

■ The defendant next argues that his plea was involuntary because he received inadequate Supreme Court Rule 402 (177 Ill. 2d R. 402) admonishments. Before a trial court can accept a guilty plea, Rule 402(a) requires that the defendant be admonished concerning the nature of the charge, the minimum and maximum sentences, the right to plead guilty or not guilty, and the rights that are waived by pleading guilty. See 177 Ill. 2d R. 402(a). Rule 402(b) requires the following:

"The court shall not accept a plea of guilty without first determining that the plea is voluntary. *** The court, by questioning the defendant personally in open court, *** shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea." 177 Ill. 2d R. 402(b).

"The purpose of Rule 402 admonishments is to ensure that a defendant understands his plea, the rights he has waived by pleading guilty and the consequences of his action." *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009). However, the failure to properly admonish a defendant pursuant to Rule 402 does not require automatic reversal. *Davis*, 145 Ill. 2d at 250. Substantial, not literal, compliance with Rule 402 is all that is required. *Dougherty*, 394 Ill. App. 3d at 138. "Whether reversal is required depends on whether real justice has been denied or whether defendant has been prejudiced by the inadequate admonishment." *Davis*, 145 Ill. 2d at 250. If the record shows that a guilty plea was voluntary and not the result of any force, threats, or promises, then any failure to strictly comply with Rule 402 is deemed harmless. *People v. Ellis*, 59 Ill. 2d 255, 257 (1974).

First, the defendant contends that his admonishments were improper because the trial court failed to ascertain whether his plea was the result of any promises. See 177 Ill. 2d R. 402(b). Nonetheless, this failure was harmless because the record demonstrates that the defendant's guilty plea was not the result of any promises made either before the plea hearing or during the recess. See *Ellis*, 59 Ill. 2d at 257. Attorney Peccarelli testified that she did not make any promises in exchange for the defendant's plea, and at the October 14, 2005, hearing, the defendant acknowledged that no promises had been made. As such, the defendant was not prejudiced by the trial court's failure to inquire as to any promises and reversal is therefore not required on this basis. See *Davis*, 145 Ill. 2d at 250.

The defendant also argues that his admonishments were improper because the trial court did not provide him with new admonishments following the recess in the plea hearing. The record indicates that the recess lasted only one to two hours. Rule 402 admonishments need not necessarily be repeated if a hearing is temporarily interrupted. See *People v. Merritt*, 16 Ill. App. 3d 69, 71 (1973); *People v. Trenter*, 3 Ill. App. 3d 889, 891 (1972). The defendant cites the following cases for the proposition that new admonishments were required following the recess: *People v. Johns*, 229 Ill. App. 3d 740 (1992), *People v. Culbertson*, 162 Ill. App. 3d 319 (1987), and *People v. Porter*, 61 Ill. App. 3d 941 (1978). In all of those cases, the courts determined that admonitions given at an earlier proceeding could not be considered to satisfy admonitions required at a subsequent plea hearing. Although it is not completely clear from the recitation of facts in each case, the implication is that the earlier proceeding occurred on a different day than the plea proceeding, not after a brief recess as in the present case. Moreover, the earlier proceedings in those cases were not plea hearings, and the admonishments, therefore, were not given within that context. In the present case, the admonishments were given within the context of a plea hearing. Accordingly, we find the defendant's reliance on those cases unpersuasive.

Moreover, the record shows that the failure to readmonish the defendant did not result in any injustice or prejudice. The admonishments substantially complied with Rule 402 and the recess was brief. The purpose of the recess was specifically to allow the defendant to reconsider his plea and consult with his attorney. After the recess, the defendant acknowledged the previous admonishments and indicated that he understood the rights he was giving up by pleading guilty. Furthermore, after the defendant stipulated to the factual basis, the defendant acknowledged that he understood the nature of the charges, the possible penalties, and the fact that the trial court would determine an appropriate sentence. Under these circumstances, there was substantial compliance with Rule 402 and we cannot say that any inadequacies in those admonishments require reversal. See *Davis*, 145 Ill. 2d at 250.

■ The defendant's next contention on appeal is that his guilty plea was not knowingly and voluntarily entered into because his counsel was ineffective in failing to move for dismissal based on speedy-trial grounds. Ordinarily, a defendant may not raise claims of the deprivation of constitutional rights that occurred prior to the entry of a guilty plea. *People v. Miller*, 346 Ill. App. 3d 972, 980 (2004). However, a defendant may attack the voluntary character of a plea by showing that it was based on ineffective assistance of counsel. *Miller*,

346 Ill. App. 3d at 980. The two-part test for analyzing claims of ineffective assistance of counsel as set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), is applicable to claims of ineffective assistance in the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58, 88 L. Ed. 2d 203, 210, 106 S. Ct. 366, 370 (1985). To establish a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) the deficient performance was prejudicial. *Miller*, 346 Ill. App. 3d at 982.

When a guilty plea is challenged on ineffective-assistance grounds, the prejudice prong of *Strickland* is satisfied if a reasonable probability exists that, but for counsel's errors, the defendant would not have pled guilty. *Miller*, 346 Ill. App. 3d at 982. The failure to move for dismissal based on speedy-trial grounds will be deemed ineffective assistance of counsel if such motion would have been granted and no justification has been proffered for the attorney's failure to bring such motion. *People v. Staten*, 159 Ill. 2d 419, 431 (1994). However, the failure to move for discharge cannot demonstrate either deficient performance or prejudice where there were no lawful grounds to do so. *People v. Murray*, 379 Ill. App. 3d 153, 158 (2008). The issue of whether a defendant has received ineffective assistance of counsel is a mixed question of fact and law. *People v. Davis*, 353 Ill. App. 3d 790, 794 (2004). We defer to the trial court's factual findings but review *de novo* whether counsel's omission supports an ineffective-assistance claim. *Davis*, 353 Ill. App. 3d at 794.

█ In the present case, to determine if counsel was ineffective in failing to move for dismissal on speedy-trial grounds, we must evaluate whether such a motion would have been meritorious. Both the United States and the Illinois Constitutions guarantee a defendant the right to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8; *People v. Cordell*, 223 Ill. 2d 380, 385 (2006). A determination as to whether a defendant's constitutional right to a speedy trial has been violated requires a balancing of four factors (the *Barker* factors): (1) the length of the delay; (2) the reasons for the delay; (3) the prejudice, if any, to the defendant; and (4) the defendant's assertion of his right. *People v. Crane*, 195 Ill. 2d 42, 48 (2001), citing *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 116-17, 92 S. Ct. 2182, 2192 (1972). "All four factors are closely related and no one factor is necessary or sufficient to a finding that the right to a speedy trial has been violated." *Crane*, 195 Ill. 2d at 52. Whether a defendant's constitutional right to a speedy trial has been violated should be determined based on the totality of the circumstances. *Crane*, 195 Ill. 2d at 48. When resolving a constitutional speedy-trial claim, we review the trial court's factual findings for manifest error but review *de novo*

the ultimate determination of whether a defendant's constitutional right to a speedy trial has been violated. *Crane*, 195 Ill. 2d at 51-52.

In the present case, a motion for dismissal based on a constitutional speedy-trial violation would have been without merit. The first *Barker* factors to consider are the length of the delay and the reasons for the delay. *Crane*, 195 Ill. 2d at 48. There was a 12-year delay from the time the defendant was charged in this case (1989) until he pled guilty in 2001. Such a delay is considered "presumptively prejudicial" and sufficient to trigger a speedy-trial inquiry. *Crane*, 195 Ill. 2d at 52-53. Nonetheless, we find this delay mostly attributable to the defendant. The record shows that at his bond call on September 24, 1989, the defendant was informed of the charges against him, his next court date, and the State's right to try him *in absentia* if he failed to appear. The defendant nonetheless fled the country. The defendant argues that the State is responsible for part of the delay because his Kane County arrest warrants were allegedly recalled in 1998. However, the trial court determined that the State made diligent efforts to locate the defendant after he fled and this determination was not against the manifest weight of the evidence. As noted by the trial court, the evidence showed that the State worked with the FBI to obtain a federal flight warrant, and with Interpol to obtain a red notice, and that the State frequently checked the status of these warrants to determine if the defendant had been apprehended. Furthermore, the State conducted periodic surveillance at the defendant's last address, at his family's home, and at the airport. Finally, shortly after the defendant returned to the United States, he was red-flagged by Interpol and apprehended in New York. Accordingly, we find the defendant's argument, that the delay is partly attributable to the State due to faulty or negligent police procedure, to be without merit.

After the defendant was taken into custody in 2000, he pled guilty in this case about one year later. The first nine months of that delay were attributable to the defendant. Upon the defendant's return he undertook proceedings to vacate his convictions that resulted from his trial *in absentia*. Had the defendant not fled the jurisdiction, there would not have been a trial *in absentia* and there would not have been a nine-month delay in resolving the defendant's attacks on those proceedings. After the defendant's convictions were vacated on May 31, 2001, a trial on simultaneously pending charges, namely, case No. 89—CF—1252, commenced within three months and the defendant pled guilty in this case before the conclusion of those proceedings.

The third factor to consider is the defendant's assertion of his right to a speedy trial. In this case, the defendant did not file a speedy-trial demand until June 15, 2001. The defendant argues that the delay

in demanding a speedy trial should not be held against him because the demand for a speedy trial would not have served any purpose before the invalid convictions resulting from his trial *in absentia* were vacated. Nonetheless, had the defendant not fled the country, there would not have been a trial *in absentia*. The defendant had the opportunity to face the charges and file a speedy-trial demand in 1989 but voluntarily chose not to do so.

The final consideration in a constitutional speedy-trial analysis is the prejudice to the defendant. The defendant argues that he was prejudiced by the 12-year delay because he could not remember what happened on the day of his alleged crime and therefore could not develop independent evidence to support a defense. Moreover, his attorney had been unable to locate any of his potential alibi witnesses to corroborate his whereabouts on September 22, 1989. However, any prejudice from the 12-year delay was attributable to the defendant because he chose to flee the country.

A balancing of the *Barker* factors leads us to conclude that the defendant was not deprived of his constitutional right to a speedy trial. All four *Barker* factors weigh in favor of the State. As explained, the majority of the delay in this case was attributable to the defendant fleeing the country despite his knowledge of the pending charges. Additionally, the delay from when the original convictions were vacated until the defendant pled guilty was reasonable given that the charges were 12 years old. Furthermore, the defendant did not assert his right to a speedy trial until June 15, 2001. Finally, as stated, any prejudice from the 12-year delay was the result of the defendant's own conduct in fleeing the country.

The defendant relies on *United States v. Mendoza*, 530 F.3d 759 (9th Cir. 2008), in arguing that a motion for dismissal based on constitutional speedy-trial grounds would have been successful under the circumstances in the present case. However, *Mendoza* is distinguishable on its facts. Specifically, in *Mendoza*, the defendant fled the country before he was indicted. *Mendoza*, 530 F.3d at 761-62. Despite the State's previous success in contacting Mendoza abroad, it never informed him of the indictment. *Mendoza*, 530 F.3d at 763. The only act the State had taken in its pursuit of Mendoza was to place a warrant for his arrest on a law enforcement database so that he would be detained if he attempted to return to the United States. *Mendoza*, 530 F.3d at 763. The *Mendoza* court determined that an eight-year delay between indictment and trial violated Mendoza's constitutional right to a speedy trial because he was not informed of the indictment and the State had not diligently pursued him. *Mendoza*, 530 F.3d at 764. In the present case, unlike *Mendoza*, the defendant was aware of the

pending charges prior to leaving the United States, and the trial court specifically found that the State had made diligent efforts in pursuit of the defendant. That determination was not against the manifest weight of the evidence. As such, based on the totality of the circumstances, defense counsel was not ineffective in failing to move for dismissal of the charges on constitutional speedy-trial grounds prior to the defendant's guilty plea, because such a motion would have been unsuccessful. See *Murray*, 379 Ill. App. 3d at 158.

The defendant also argues that his counsel was ineffective in failing to move for dismissal on statutory speedy-trial grounds. In Illinois, a criminal defendant has a statutory right to a speedy trial. 725 ILCS 5/103—5 (West 2008). Specifically, section 103—5 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/103—5 (West 2008)), also known as the Speedy Trial Act, provides an automatic 120-day speedy-trial right for a defendant held in custody on a pending charge and does not require a defendant to file a demand to exercise that right. 725 ILCS 5/103—5(a) (West 2008). "Proof of a violation of the statutory right requires only that the defendant has not been tried within the period set by statute and that defendant has not caused or contributed to the delays." *Staten*, 159 Ill. 2d at 426. The 120-day statutory period commences when a defendant is taken into custody in Illinois. See *People v. Hayes*, 23 Ill. 2d 527, 529 (1962) (although defendant was arrested in Mississippi, his statutory right to a speedy trial did not commence until he was returned to Illinois). A defendant who is not tried within the statutory time period is entitled to dismissal of the charges and a discharge from custody. 725 ILCS 5/103—5(d) (West 2008).

In the present case, it is undisputed that although the defendant was arrested in New York, he did not appear in an Illinois court until September 14, 2000. The defendant argues that the statutory period expired 120 days later, on January 12, 2001, and, therefore, a meritorious basis to dismiss on statutory speedy-trial grounds existed immediately after his conviction was vacated on May 31, 2001. The defendant further argues that his 1990 conviction was void because he was not notified by certified mail of the trial date by the clerk's office as required by statute and, therefore, the trial court lacked the statutory authority to conduct a trial *in absentia*. The defendant argues that, because his 1990 conviction was void, it was of no legal effect and the speedy-trial clock began to run as soon as he appeared in Illinois, rather than restarting when that conviction was vacated. Finally, the defendant acknowledges that the speedy-trial clock begins anew if a conviction is reversed and a new trial is granted. The defendant concedes that if his 1990 conviction was not void, then the right to a speedy trial was not triggered until May 31, 2001.

The State argues that there was no violation of the defendant's statutory right to a speedy trial. The State contends that the speedy-trial clock did not begin to run until the trial court vacated the defendant's conviction on May 31, 2001. The State argues that the defendant's guilty plea occurred 100 days later on September 7, 2001, within the statutory time period. Furthermore, the State argues that the defendant was tried and convicted by a court of competent jurisdiction in October 1990 and, therefore, the defendant's conviction was voidable, not void. The State insists that the clerk's failure to notify the defendant by certified mail of the trial date was a procedural error that did not deprive the trial court of jurisdiction.

"Whether a judgment is void or voidable presents a question of jurisdiction." *People v. Davis*, 156 Ill. 2d 149, 155 (1993). A judgment is void if the court that entered it lacked jurisdiction. *People v. Rodriguez*, 355 Ill. App. 3d 290, 296 (2005). The jurisdictional failure can be the court's lack of (1) personal jurisdiction, (2) subject matter jurisdiction, or (3) the inherent power to render the particular judgment. *Rodriguez*, 355 Ill. App. 3d at 296. Some courts characterize the third jurisdictional problem as a subspecies of subject matter jurisdiction while others characterize it as a situation where a court acts in excess of its jurisdiction. *In re Gilberto G.-P.*, 375 Ill. App. 3d 728, 733 (2007) (Grometer, P.J., specially concurring). In Illinois, jurisdiction is conferred by the constitution, and circuit courts have jurisdiction over all justiciable matters. *Davis*, 156 Ill. 2d at 156.

The defendant argues that the trial court lacked the inherent power to render the judgment because in the absence of notice of the trial date as prescribed by statute, the trial court lacked the authority to conduct a trial *in absentia*. Section 115—4.1(a) of the Code provides as follows:

> "When a defendant after arrest and an initial court appearance for a non-capital felony or a misdemeanor, fails to appear for trial, at the request of the State and after the State has affirmatively proven through substantial evidence that the defendant is willfully avoiding trial, the court may commence trial in the absence of the defendant. *** The court may set the case for a trial which may be conducted under this [s]ection despite the failure of the defendant to appear at the hearing at which the trial date is set. When such trial date is set the clerk shall send to the defendant, by certified mail at his last known address indicated on his bond slip, notice of the new date which has been set for trial. Such notification shall be required when the defendant was not personally present in open court at the time when the case was set for trial." 725 ILCS 5/115—4.1(a) (West 2008).

"[S]trict compliance with section 115—4.1(a)'s certified mailing requirement is a mandatory prerequisite to conducting a criminal trial *in absentia*, where the defendant was not personally present in open court when the case was set for trial." *People v. Ramirez*, 214 Ill. 2d 176, 183 (2005).

In the present case, the trial court had both personal jurisdiction and subject matter jurisdiction. The trial court obtained personal jurisdiction over the defendant when he appeared at the September 24, 1989, bond hearing. See *People v. Mescall*, 379 Ill. App. 3d 670, 673 (2008) (a court acquires personal jurisdiction over a defendant when he appears before it). Moreover, the trial court obtained subject matter jurisdiction when the State created a justiciable controversy by filing criminal charges against the defendant with the court. *People v. Woodall*, 333 Ill. App. 3d 1146, 1156 (2002); see also 720 ILCS 5/1—5 (West 2008) (the trial court has subject matter jurisdiction over all criminal offenses committed in this state). The question then becomes whether the failure to provide the defendant the statutorily required notice of his trial date divested the trial court of its subject matter jurisdiction or affected its "inherent power" to render a conviction.

The answer to this question was provided by our supreme court in *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325 (2002). In that case, our supreme court explained that "*except in the area of administrative review*, the jurisdiction of the circuit court flows from the constitution. Ill. Const. 1970, art. VI, §9." (Emphasis in original.) *Belleville Toyota*, 199 Ill. 2d at 335. Accordingly, the *Belleville Toyota* court rejected the argument that the legislature could, via statutory provisions, impose "conditions precedent" to a court's exercise of jurisdiction. *Belleville Toyota*, 199 Ill. 2d at 335-36. In reliance on our supreme court's determination in *Belleville Toyota*, we hold that the failure to provide the defendant notice of his 1990 trial date, in compliance with statutory requirements, rendered his conviction voidable, not void. See *Belleville Toyota*, 199 Ill. 2d at 340-41 (holding that the limitations period contained in the Motor Vehicle Franchise Act (815 ILCS 710/14 (West 2000)) was not a jurisdictional, nonwaivable prerequisite to suit). Moreover, as explained by our supreme court in *Davis*:

> "Generally, once a court has acquired jurisdiction, no subsequent error or irregularity will oust the jurisdiction thus acquired. Accordingly, a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law or both. (22 C.J.S. *Criminal Law* §176 (1989).) ***
> ***

\*\*\* 'There are many rights belonging to litigants—rights which a court may not properly deny, and yet which if denied do not oust the jurisdiction or render the proceedings absolutely null and void.' (*Humphries v. District of Columbia* (1899), 174 U.S. 190, 194, 43 L. Ed. 944, 945, 19 S. Ct. 637, 639.)" *Davis*, 156 Ill. 2d at 156-57. Jurisdiction is something that relates to a court's power to act, not to the rights of the parties. *Davis*, 156 Ill. 2d at 157, citing 21 C.J.S. *Courts* §9 (1990).

We find further support for our determination in *In re M.W.*, 232 Ill. 2d 408 (2009). Although *M.W.* concerns a juvenile court proceeding, it is nonetheless relevant in the present case because juveniles are entitled to the same due-process safeguards afforded to defendants in criminal proceedings, such as adequate notice to the parties. *In re S.R.H.*, 96 Ill. 2d 138, 144 (1983). In *M.W.*, the State filed a petition for adjudication of wardship against M.W., charging M.W. with robbery. *In re M.W.*, 232 Ill. 2d at 413. Each of M.W.'s parents was provided a copy of the petition at the detention hearing. *In re M.W.*, 232 Ill. 2d at 413. Prior to the commencement of the adjudicatory hearing, the State moved to amend the petition to add a count of aggravated battery. *In re M.W.*, 232 Ill. 2d at 413. M.W., her mother, and her attorney were present at that time. However, M.W.'s father was not present at that hearing and was not properly served with a copy of the amended petition as required by the Juvenile Court Act of 1987 (705 ILCS 405/5—530 (West 2004)). Following the hearing, the trial court found M.W. delinquent on both grounds. *In re M.W.*, 232 Ill. 2d at 413-14.

On appeal, M.W. argued that the delinquency order was void because her father had not been served with written notice of the amended petition. *In re M.W.*, 232 Ill. 2d at 414. The supreme court rejected that argument and determined that the failure to provide notice to the father of the amended petition as required by statute did not affect the trial court's personal or subject matter jurisdiction. *In re M.W.*, 232 Ill. 2d at 426, 428. The supreme court determined that the trial court's subject matter jurisdiction was invoked when the State filed the petition for adjudication of wardship and that the trial court's personal jurisdiction over M.W.'s father was established when he appeared at the detention hearing and was given a copy of the original petition. *In re M.W.*, 232 Ill. 2d at 423-26, 429. The supreme court held that the trial court's personal and subject matter jurisdiction were unaffected by the act of conducting the adjudicatory hearing absent the statutorily required notice to M.W.'s father. *In re M.W.*, 232 Ill. 2d at 423-26, 429. With respect to subject matter jurisdiction, our supreme court explained:

"[N]ot every *** failure to strictly comply with the provisions of the statute creating the justiciable matter is an act in excess of statutory authority that renders the court's judgment void. ***

*** [T]he question of subject matter jurisdiction is a matter of the justiciability of the class of cases to which the instant case belongs. Error or irregularity in the proceeding, while it may require reversal of the court's judgment on appeal, does not oust the subject matter jurisdiction once it is acquired." *In re M.W.*, 232 Ill. 2d at 422-23.

With respect to personal jurisdiction, our supreme court noted the general rule "that personal jurisdiction, once established, continues until all matters in the case are resolved." *In re M.W.*, 232 Ill. 2d at 428. Accordingly, the supreme court held that the statutorily required notice was not a prerequisite to the trial court's authority to act and, therefore, the delinquency order was not void. *In re M.W.*, 232 Ill. 2d at 426, 441.

The supreme court's determination in *M.W.* is instructive in the present case. In the present case, the trial court obtained personal jurisdiction over the defendant when he appeared at the bond hearing, and it obtained subject matter jurisdiction when the State filed criminal charges against the defendant. Based on the reasoning in *M.W.*, the subsequent failure of the clerk to send the statutorily required notice to the defendant did not affect the trial court's personal or subject matter jurisdiction or its authority to act. *In re M.W.*, 232 Ill. 2d at 426. Accordingly, such failure did not render the defendant's conviction void.

The defendant relies on *Rodriguez*, 355 Ill. App. 3d at 296, in arguing that the failure to provide proper notice pursuant to the statute stripped the trial court of its inherent power to hold a trial *in absentia.* In *Rodriguez*, the State filed a petition for adjudication of wardship against the minor defendant, alleging that he had committed the offenses of unlawful delivery of a controlled substance and unlawful delivery of cannabis. *Rodriguez*, 355 Ill. App. 3d at 292. The trial court granted the State's petition for the nondiscretionary transfer of the controlled-substance charges to criminal court pursuant to section 5—4(7)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/5—4(7)(a) (West 1992)). *Rodriguez*, 355 Ill. App. 3d at 292. One of the requirements of the nondiscretionary transfer was that the offenses were committed "on a public way." 705 ILCS 405/5—4(7)(a) (West 1992). After a bench trial, the defendant was found guilty of both controlled-substance charges and sentenced to six years' imprisonment. *Rodriguez*, 355 Ill. App. 3d at 292. On appeal, the defendant challenged his conviction by arguing that the trial court erred in interpreting

"public way" to include a gas-station parking lot, where the defendant had allegedly sold the drugs. *Rodriguez*, 355 Ill. App. 3d at 291. This court agreed with the trial court's interpretation of "public way" and affirmed the defendant's convictions on appeal. *Rodriguez*, 355 Ill. App. 3d at 292.

Seven years later, this court reinterpreted the term "public way" to exclude a gas station parking lot. *Rodriguez*, 355 Ill. App. 3d at 292, citing *People v. Dexter*, 328 Ill. App. 3d 583, 587 (2002). Thereafter, the defendant in *Rodriguez* filed a motion to vacate his conviction on the basis that it was void. *Rodriguez*, 355 Ill. App. 3d at 292. The trial court determined that *Dexter* did not apply retroactively and denied the defendant's motion. *Rodriguez*, 355 Ill. App. 3d at 293. On appeal, this court determined that the rule in *Dexter* did in fact apply retroactively and that such a determination was necessary to avoid the possibility that a defendant could stand convicted of an act that the law did not make criminal or face a punishment that the law could not impose. *Rodriguez*, 355 Ill. App. 3d at 295. Because the defendant's acts had not occurred on a "public way," the question then became whether the transfer to criminal court rendered the defendant's conviction and sentence void. *Rodriguez*, 355 Ill. App. 3d at 296. This court determined that the trial court lacked the power to impose a criminal conviction and sentence when the Juvenile Court Act required a juvenile adjudication and punishment. *Rodriguez*, 355 Ill. App. 3d at 296. Accordingly, this court determined that the defendant's conviction and sentence were void. *Rodriguez*, 355 Ill. App. 3d at 296.

The decision in *Rodriguez* does not control the result in the present case. First, *Rodriguez* is distinguishable from the present matter in that a completely different substantive area of law was applied to Rodriguez than should have been applied. Specifically, the circuit court tried Rodriguez under criminal laws when it should have tried him under juvenile laws. Furthermore, we note that in criminal cases, the "inherent power" requirement endures mainly as a limitation on the court's ability to impose a sentence contravening a statutory requirement. Thus, a sentence not conforming to a statutory requirement is void and may be corrected at any time. *People v. Brown*, 225 Ill. 2d 188, 205 (2007). In *Rodriguez*, the court imposed what amounted to an unauthorized sentence under the criminal code, because the defendant could be prosecuted and sentenced only under the Juvenile Court Act. In the present case, the only alleged error with the conviction or sentence is that the defendant did not receive proper notice of his 1990 trial date. Regardless of this distinction, our supreme court has observed that the requirement that a court have the "inherent power" to render a particular judgment emanates from

case law prior to 1964, before reform of the judicial article of the 1870 constitution, when courts exercised only limited jurisdiction conferred by statute. See *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 529-30 (2001). In making its determination that the defendant's conviction was void, the *Rodriguez* court did not address our supreme court's determination in *Belleville Toyota*, that the jurisdiction of the circuit court is conferred by the constitution, not the legislature (*Belleville Toyota*, 199 Ill. 2d at 336). We express no opinion as to the propriety of the determination in *Rodriguez*; we find only that it does not control in the present matter.

For the foregoing reasons, the defendant's conviction was voidable, not void. As stated above, the defendant concedes that if his conviction was not void, the statutory speedy-trial clock restarted when his conviction was vacated on May 31, 2001. See *People v. Collins*, 382 Ill. App. 3d 149, 152 (2008). The defendant pled guilty in this case 100 days later, on September 7, 2001, within the statutory time period. As such, the defendant was not denied his statutory right to a speedy trial, and defense counsel was not ineffective in failing to move for dismissal of the charges on that ground. See *Murray*, 379 Ill. App. 3d at 158. Because we have determined that the defendant's guilty plea was voluntary and that his trial counsel was not ineffective, the trial court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

BURKE, J., concurs.

JUSTICE O'MALLEY, specially concurring:

I have little doubt that a court should be empowered at any time, whether on direct appeal or not, to correct a criminal sentence not authorized by law. However, the legal reasoning Illinois courts use to reach this conclusion—the idea that such sentences are void for exceeding statutory authorization—seems a vestige of a now-supplanted constitutional scheme. See *In re T.E.*, 85 Ill. 2d 326, 333 (1981) (citing pre-1964 cases for the void-sentence rule); *Belleville Toyota*, 199 Ill. 2d 325 (explaining that, for nonadministrative cases, the 1964 amendments to the constitution gave courts power over all justiciable matters, so that court actions not authorized by statute should no longer be considered void for lack of jurisdiction). This legal reasoning leaves courts faced with illegal-sentence issues in the

uncomfortable position of choosing between binding authority holding that such sentences are void as exceeding statutory authority and equally binding authority holding that lack of statutory authority does not render a decision void. Worse, a court asked to decide whether to extend the special rule for sentencing to a new context must derive its analytical framework from an inscrutable and irreconcilable area of law.

My instinct is that courts are correct in their conclusion that illegal sentences may be corrected at any time, but they should update their reasoning to conform with our current constitution. The supreme court has offered that "[c]riminal proceedings that involve the power to render judgments or sentences address a separate set of concerns" not at issue in other cases. *Steinbrecher*, 197 Ill. 2d at 532.[2] This statement implies the idea that, independent of "void" and "voidable" labels and all they connote, there are some matters that a defendant's basic or constitutional rights require he be allowed to raise at any time, whether on direct appeal or in some collateral proceeding. These rights could be embodied in a new statute or rule, or articulated and explained in new precedent, so that their contours could be more easily identified and the matters to which they extend more easily recognized. As the law now stands, we know that illegal sentences are among the matters defendants may raise at any time, but we have no tenable reason why, nor any framework for determining what other matters should receive similar treatment.

---

[2]Although the supreme court made this statement, the supreme court has also stated the rule explained in *Belleville Toyota* in criminal cases. See *People v. P.H.*, 145 Ill. 2d 209, 221-22 (1991) (in a decision predating *Belleville Toyota*, applying the *Belleville Toyota* rule in a criminal case). Further, the constitution draws no distinction for jurisdictional purposes between civil and criminal cases. I therefore do not understand the supreme court's statement in *Steinbrecher* to indicate that the *Belleville Toyota* rule does not apply in criminal cases.